# Highlands, Appellant, *v.* Cumberland Valley Farmers' Mutual Fire Insurance Company.

*Insurance—Fire insurance—Subrogation—Release of negligent party.*

Where a policy of fire insurance provides that if loss shall happen by reason of the negligence of another the fire insurance company shall be subrogated to the rights of the insured, and it appears that the premises insured were destroyed by the negligence of a railroad company, and the insured executed in consideration of a money payment an absolute release to the railroad company, the insurance company is thereby relieved from liability to the insured, and if the latter institutes a suit upon the policy, he cannot introduce parol evidence to the effect that he was deceived by the fraudulent representations of the agent of the railroad company.

Argued April 29, 1902.    Appeal, No. 402, Jan. T., 1901, by plaintiff, from judgment of C. P. Cumberland Co., Sept. T., 1900, No. 87, on judgment for defendant *non obstante veredicto* in case of Edward Highlands v. Cumberland Valley Farmers' Mutual Fire Insurance Company.    Before McCollum, C. J., Mitchell, Dean, Fell and Potter, JJ.    Affirmed.

Assumpsit upon a policy of fire insurance.    Before E. W. Biddle, P. J.

At the trial the court gave binding instructions to the jury to return a verdict for the plaintiff for $2,260.75 subject to the following points reserved:

1. Whether the evidence which was given on behalf of the plaintiff to reform the release of February 12, 1900, is admissible, the present defendant not having been a party thereto.

2. If said evidence is admissible, whether upon all the evidence a chancellor should decree that the release aforesaid shall be reformed so as to limit it to damages beyond the amount of the insurance.

3. Whether under all the admissible evidence in the case the plaintiff is entitled to recover.

4. Whether in the event that it is determined that the plaintiff is entitled to recover, the defendant shall be allowed a credit for the amount received from the Philadelphia & Reading Railroad Company.

Subsequently the court, on motion for judgment, filed the following opinion :

The fire insurance policy, upon which this suit is founded, contains the following provision : " If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on the payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment."

On January 30, 1900, the barn and contents which were insured under said policy for $2,100, were totally destroyed by fire, caused probably by sparks from a locomotive of the Philadelphia & Reading Railway Company. A representative of said railway company called at the house of plaintiff on February 12, 1900, and after some negotiations paid to him the sum of $1,100 in full settlement of any claim he might have against the company by the reason of the fire, and received from him the following release :

" Know all men by these presents, that I, Edward Highlands, residing near Leesburg, State of Pennsylvania, in consideration of the sum of Eleven Hundred Dollars, to me in hand paid by the Philadelphia & Reading Railway Company, at and before the sealing of these presents, receipt of which is hereby acknowledged, do hereby remise, release, quit-claim and forever discharge the said Philadelphia & Reading Railway Company, its successors, and assigns, of and from all actions, causes of action, suits, claims and demands whatsoever, for, upon, or by reason of, any damages, loss or injury which heretofore have been, or which may hereafter be sustained by me in consequence of fire alleged to have been caused by sparks from locomotive on my property near Leesburg, Pa., on January 30, 1900, and any other fire or fires at and before the sealing of these presents.

" It being expressly understood, that the payment of the said sum of Eleven Hundred Dollars is not to be considered as an admission on the part of the said Philadelphia & Reading Railway Company, that any liability whatever has attached to it in consequence of the said accident.

" In witness whereof, I have hereto set my hand and seal this

twelve day of February, Anno Domino, 1900, signed, sealed and delivered

 " in presence of      " EDWARD HIGHLANDS.

  " T. H. BOSWORTH.

         " Correct

           " A. C. BRISTER,"

             " Claim Agent."

As this instrument discharged the railway company from any further liability for the loss, it also extinguished the plaintiff's claim against the defendant: Niagara Fire Ins. Co. v. Fidelity Title & Trust Co., 123 Pa. 516.   The point is made, however, on behalf of the plaintiff that he was overreached and deceived by the railway company's agent, and that the testimony affords ample warrant to the court to set aside the release as fraudulent.   Was said testimony admissible?   It is undoubtedly true that in a suit between one of the parties to a written contract and a stranger, parol evidence has frequently been received to impeach or reform the contract.   It is always received when offered by a stranger, " who, if it were otherwise, might be prejudiced by things recited in the writings, contrary to the truth, through the ignorance, carelessness, or fraud of the parties; and who, therefore, ought not to be precluded from proving the truth, however contradictory to the written statement of others: " 1 Greenleaf on Ev. sec. 279.   The rights and interests of third persons would truly be in peril if the rule excluding parol evidence were to be extended to them, in such manner as to conclude them from giving evidence tending to contradict an agreement made by others: Krider v. Lafferty, 1 Wh. 302.   When the parol evidence, however, is offered in such a suit by one of the signers of the contract, effect can only be given to it provided no damage will be inflicted thereby on the other party litigant.   This conclusion is founded on the well established principle that where one of two innocent persons must suffer from the fraud of a third, that one must bear the loss whose act or neglect has been the occasion of the injury.   Inasmuch as the defendant stood in the position of a surety of the railway company for the payment to the plaintiff of the sum of $2,100, another rule of law is pertinent, viz: A surety, on payment of the debt of his principal, is entitled to be

substituted to all the securities which the creditor holds; there-
fore, if substitution be rendered fruitless by any act of the
creditor, a release pro tanto, or for the whole, as the case may
be, necessarily results; and it is immaterial whether, at the
time of the release, the creditor does or does not know of the
relation of principal and surety between the debtors: Temple-
ton v. Shakley, 107 Pa. 370.

Gordon v. McCarty, 3 Wh. 407, has been cited by the coun-
sel for plaintiff as being antagonistic to the above conclusion,
but it does not sustain the position they take. The court in
that case says that no good reason can be assigned why a surety
should take advantage of a fraud, practiced by his principal
upon a creditor in obtaining a release, " If it be that he (the
surety) has been in no wise prejudiced by it, or placed in no
worse condition now than he would have been provided no
such release had ever been obtained." The succeeding clause
of the opinion is involved, but is merely to the effect that if
the giving of the release has occasioned injury to the surety,
the burden of proving this will lie upon him, but such proof
cannot be interposed as an objection to an offer of evidence to
establish fraud. In other words, as we interpret the opinion,
the plaintiff should in the first place be given an opportunity
to show that his execution of the release was fraudulently ob-
tained, and if he succeeds in doing so, the defendant should
then be permitted to prove as a defense that the plaintiff's act
in signing the instrument worked him a wrong. That plain-
tiff's act in the present instance did the defendant a wrong to
the full amount of the insurance is clear. Further, both the
plaintiff and the defendant claimed that the fire had been
caused by the railway company, and prior to the execution
of the release one of the defendant's officers warned the plain-
tiff to be careful what he signed for said company. In view of
the foregoing, our determination is that parol evidence was
not admissible to impeach or reform the release of February 12,
1900.

This determination renders unnecessary an extended dis-
cussion of the question whether said evidence, if admissible,
would have justified a chancellor in decreeing a reformation
of the release, so as to limit it to damages beyond the amount
of the insurance. We have given this subject careful consid-

eration and do not deem the evidence sufficient for that purpose, for the following reason: There was no fraud or deception practiced on the plaintiff as to the contents of the paper; it lay upon his table for an hour, he looked over it, and it was read to him. Any misrepresentation which was made was only as to its legal effect, concerning which the position of the railway company agent was, that said company was not liable for the property covered by insurance, because the defendant had been paid to take the risk as to that and would have to stand the loss under its policy. Whether or not he was honestly mistaken in the matter we do not know, but we cannot assume that he was not. The instrument expressly sets forth that it shall not be considered as an admission on the part of the railway company that any liability whatever has attached to it in consequence of the accident; hence it is palpable that the plaintiff may not keep the money he received for signing it, and also have it reformed to mean something entirely diffirent from what it states, as a basis for an additional recovery. Waiving the abstract point whether the mistake of law in this case would warrant an impeachment of the release, we decide that it cannot in any event be altered or reformed until the $1,100 received by the plaintiff has been returned to the railway company.

All of the reserved questions of law are answered in the negative.

And now, December 20, 1901, in pursuance of the above opinion, the verdict of the jury is set aside, and it is ordered that judgment be entered in favor of the defendant, non obstante veredicto, upon payment of the jury fee.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*E. M. Biddle, Jr.*, with him *F. E. Beltzhoover*, for appellant.

*John T. Stuart* and *Hays & Hays*, for appellee, were not heard.

PER CURIAM, May 19, 1902:

The judgment non obstante veredicto is affirmed on the opinion of the court on the question of law reserved.