# Krogulski, Appellant, v. Northwestern National Insurance Co.

*Insurance—Fire insurance—Appraisement—Right to rebuild.*

Where a fire insurance company's policy gives the company an option to pay a loss as determined by an appraisement, or to rebuild, and the insured disregards a demand for an appraisement, files his proofs of loss, and thereafter ignores a second demand for an appraisement, and without notice to the company, proceeds to demolish the building thereby depriving the company of its option, he cannot recover in an action on the policy.

Argued March 7, 1917.   Appeal, No. 34, March T., 1917, by plaintiff, from judgment of C. P. Luzerne Co., March T., 1914, No. 576, on verdict for defendant in case of Joseph Krogulski v. Northwestern National Insurance Company of Milwaukee.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

48 KROGULSKI, Appel., *v.* NORTHWESTERN N. I. CO.

Assignment of Error—Opinion of the Court. [68 Pa. Superior Ct.

Assumpsit on a policy of fire insurance. Before WOODWARD, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in giving binding instructions for defendant.

*Paul J. Schmidt* and *W. Alfred Valentine,* for appellant.

*Frank R. Shattuck,* with him *John T. Lenahan,* for appellees.

OPINION BY HEAD, J., October 8, 1917:

The action was brought to recover a fire loss against which it was alleged the plaintiff was indemnified under a policy issued by the defendant company. At the conclusion of the trial the learned court below directed a verdict for the defendant on the ground the evidence conclusively established the plaintiff had broken at least one, if not both, of two important covenants or conditions of the policy contract. We quote them: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained according to such actual cash value,......and shall in no event exceed what it would have cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and the company, or, if they differ, then by appraisers as hereinafter provided, &c.......It shall be optional, however, with this company to take all or any part of the articles at such ascertainment or appraised value and also to repair, rebuild or replace property lost or damaged with other of like kinds and quality within a reasonable time on giving notice within thirty days after the receipt of the proofs herein required of its intention so to do, &c."

The right and option thus secured to the company were valuable and could not be lost save by some act of omission by the company itself. To secure and enforce these rights, the policy contract contains these further provisions, "The loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required shall have been received by the company, including an award by appraisers when appraisal has been required......No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

As the facts which give rise to the contention between the parties are somewhat unusual, we shall briefly recite them. On April 1, 1913, a fire occurred during the life of the policy which either partially or entirely destroyed the insured premises. The first notice of the loss was promptly given the next day. On April 15th an adjuster of the defendant company appeared, examined the property and demanded an appraisement for the purpose of ascertaining the amount of the loss. The defendant then and thereafter neglected and refused to enter into an agreement for an appraisement. On May 13th the plaintiff filed his first proof of loss, claiming that the entire amount of such loss was $1,581.02, one-half of which, or $790.51, was due from the present defendant. There was a policy in another company on the same property for the same amount as the one in suit and, under the terms of both policies, each company would be liable for one-half the ascertained loss. Between May 27th and June 2d both of these insurance companies made a written demand for an appraisal agreement for the purpose of ascertaining the amount of the fire loss. The insured paid no attention to either of these demands. On the 7th of June he appears to have decided for himself the building was so badly damaged it could not be repaired, and, without the knowl-

edge or consent of either of the insurance companies, he proceeded to tear down and demolish what had remained of the building. On the 7th of July he forwarded to each company a second proof of loss in which he increased the amount claimed by him as the result of the fire from $1,581.02 to $3,300 so that each of the insurance companies would become liable for the full value of the policies.

Upon this state of facts the learned trial judge directed the jury to find a verdict for the defendant because the plaintiff, by his own voluntary act in destroying what remained of the building after the fire, put it out of his power to allow to the insurance company the option provided for in the policy contract. He could no longer enter into an agreement for an appraisement for there was nothing left to appraise except the foundation walls of the building. Of his own volition he took away from the insurance company its optional right to repair or replace the building as the fire had left it. By this action of the plaintiff, he deliberately violated those provisions of the contract which secured to the insurer the valuable rights we have before referred to. If it be said the company had not indicated its intention to repair or rebuild within thirty days from the date of the receipt of the first proofs of loss, the answer is this action does not rest on those proofs. If it did, the plaintiff could hardly expect to recover more than the amount he had claimed. We are not to be understood as saying that, by filing the first proofs of loss, he was concluded as to the amount of his claim. But it ought to be clear that if the insured, in filing his second proofs of loss in which he doubled his claim, was still at liberty to assert all of his rights under the contract, the insurance company was also entitled, in the light of the new proofs, to determine for itself whether it would undertake to replace the building or pay the amount of the loss ascertained by an appraisal. With the demolition of the building, it could no longer have the loss es-

timated by appraisers and was deprived of its optional right to rebuild or replace the property.

In German American Insurance Company v. Hocking, 115 Pa. 398, Mr. Justice CLARK said: "And, further, that the company might intelligently exercise the option to rebuild, it was equally important that they should have what it was the undoubted duty of the assured to supply, the plans and specifications of the property destroyed. The loss was not payable for sixty days after such statements were made and furnished to the company, and the contract was accepted expressly subject to the performance of these conditions. It follows that no suit could be brought until these conditions were complied with, nor for sixty days thereafter, which time the company reserved after the extent of their liability could be determined from the proofs, either to pay the money, or to give notice of their option to replace the property." In Post v. American Central Insurance Company, 51 Pa. Superior Ct. 352, the learned court below, in its opinion which was practically adopted by this court thus recognized the question that is here material: "Did the plaintiff, by opening his store on December 21, 1908, deprive the defendant company of its option to take all or any part of the articles at the appraised value, or replace the same with other of like kind or quality? If he did, then there can be no recovery in this case." In Highlands v. Cumberland Val., Etc., Insurance Company, 203 Pa. 134, it appeared the insured property had been destroyed by a fire caused by the negligence of the railroad company. The policy provided that in such case the insurance company, upon payment of the loss, should be subrogated to any right the property owner might have to prosecute a claim against the wrongdoer. In consideration of the payment of a certain sum of money by the railroad company, the property owner executed and delivered an absolute release to that company discharging it from all liability on account of the loss. When he sued the insurance com-

pany, it was held that because he had voluntarily put it out of his power to comply with an important and material provision of the policy, he could maintain no claim against the insurance company.

We are not concerned in a discussion of the question whether or not the insurance company could operate along both of its optional lines at the same time. The question does not arise. Our conclusion rests on the proposition that it had been denied the opportunity for an intelligent determination whether it would have its loss appraised or whether it would determine to rebuild. To adopt for the moment the language of the learned trial judge in his charge: "In other words, the plaintiff cannot recover on these policies, and the reason is he tore down his building before the companies had a chance to exercise their option either to pay an appraised valuation fixed by arbitrators or rebuild the building." It appears to us the conclusion so reached by the court below is well sustained both by reason and authority. The assignments of error are overruled.

Judgment affirmed.