## Isaac et al. *v.* Donegal and Conoy Mut. Fire Ins. Co., Appellant.

440

Argued March 15, 1932.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Douglass D. Storey,* with him *Budd B. Boose, Horace Michner Schell* and *Hause, Evans & Baker,* for appellant.—Appellant contends that appellees can not recover more than was shown on their 17th of July, 1928, inventory which was checked and found substantially correct by appellant.   They can not recover for any amount in excess thereof because by their own voluntary act of sell-

ing and scrapping the merchandise during the first week of August, 1928, without notice to appellant; they have absolutely deprived it of any opportunity to exercise its contract right to check any inventory in excess of $2,-435.89: Krogulski v. Ins. Co., 68 Pa. Superior Ct. 47; Astrich v. Ins. Co., 128 Fed. 131.

Appellees can not recover for any loss to the household furniture which was owned exclusively by Mike Isaac.

The alleged statement of a mere solicitor who has no authority either to write or to countersign policies can not create a waiver of an express term of the contract, or an estoppel to assert it: Holmes v. Ins. Co., 77 Pa. Superior Ct. 337; Schloss v. Ins. Co., 83 Pa. Superior Ct. 426; Brink v. Ins. Co., 90 Pa. Superiort Ct. 527; Pyrich v. Ins. Co., 94 Pa. Superior Ct. 159; Russell v. Ins. Co., 272 Pa. 1; Kramer v. Ins. Co., 97 Pa. Superior Ct. 27.

In a joint suit by three joint promissees on a joint contract, no recovery can be had by only one joint promissee: Gates v. Ins. Co., 14 Pa. D. & C. 559.

Appellant should have been permitted to show that the parties intended to appraise only the building.

*Clarence L. Shaver,* with him *Leonard Sobol* and *Henry G. Gress,* for appellees.—The appellant is estopped from denying liability for loss of the household furniture owned exclusively by Mike Isaac, one of the appellees: Arthurholt v. Ins. Co., 159 Pa. 5; Transcontinental Oil Co. v. Assurance Co., 278 Pa. 558; Letvin v. Ins. Co., 91 Pa. Superior Ct. 422; Penna. Co., for Ins., etc., v. Ins. Co., 295 Pa. 289; Caldwell v. Fire Assn., 177 Pa. 492; Kocher v. Kocher, 300 Pa. 206; Jabs v. Ins. Co., 101 Pa. Superior Ct. 498.

Where a policy of insurance names three persons as the insured, and the interest in the property insured is joint, and also several, recovery can be had by all in a single suit.

Opinion by Mr. Justice Kephart, May 26, 1932:

We have partially considered the facts in this case in Isaac v. D. & C. M. F. Ins. Co., 301 Pa. 351, and they need not all be restated. The fire occurred on July 4th, and on the 17th the adjuster was given an inventory showing a loss of approximately $2,400; thereafter the goods, consisting of merchandise, were transferred to a warehouse, and sold on the 8th of August. The proof of loss showed the loss as over $5,000. The insurer contends that recovery should be limited to the loss shown by the inventory made July 17th, because it had not been given a sufficient opportunity to check the goods after the fire. The evidence, however, shows that when the first inventory was given it was only partial, as appellees had not been able to make a complete inventory up to that time. The insured was not required to hold his goods for an indefinite period waiting for the company to check them. Much of the stock had to be sold as promptly as possible to prevent further loss. The policy gives the insurer the right, as often as might be reasonably necessary, to inspect "the remains of any property," but it must demand and make such inspection with reasonable promptness; it cannot unreasonably withhold its demand. Here there is no evidence of any demand except for the inventory. The court below properly submitted this question to the jury, giving appellant the benefit of every inference from the first inventory. The case is not similar to Krogulski v. Northwestern Nat. Ins. Co., 68 Pa. Superior Ct. 47.

The insurance policy covered the property of three persons, but the household furniture was owned by one of the insured individually. If the insured is not sole and unconditional owner of the property insured, he cannot recover (Holmes v. Allemannia Fire Ins. Co., 77 Pa. Superior Ct. 337; Schloss v. Importers & Exporters Ins. Co., 83 Pa. Superior Ct. 426), unless this provision is waived. Appellant contends there was no waiver or estoppel that would curtail the effect of the ownership

provision of the policy. It has been settled that insurance agents may waive certain provisions of insurance policies so as to bind their companies. An agent with authority to countersign policies may waive provisions such as those requiring permits for "other insurance" (Davis v. Home Ins. Co., 74 Pa. Superior Ct. 92; Russel v. Farmers Mut. Fire Ins. Co., 272 Pa. 1); "sole and unconditional ownership" (Jabs v. Lancaster Co. Fire Ins. Co., 101 Pa. Superior Ct. 498; Caldwell v. Fire Ins. Assn. of Phila., 177 Pa. 492; Damms v. Humboldt Fire Ins. Co., 226 Pa. 358; Clymer Opera Co. v. Flood City Mut. Fire Ins. Co., 238 Pa. 137); "written endorsement of assignment" (Spry v. Farmers Mut. Fire Ins. Co. of Pa., 101 Pa. Superior Ct. 49); "written notice of loss" (Gough v. Halperin, 306 Pa. 230); "endorsement of a transfer of decedent's ownership to another" (Thomas v. Employers Liability Assurance Corp., 284 Pa. 129; Kocher v. Kocher, 300 Pa. 206); "additional insurance permits:" Evans v. Metropolitan Life Ins. Co., 294 Pa. 406; Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475.

The question we have here is whether a subagent may similarly waive provisions of a policy, or whether knowledge of a subagent may be imputed to the company. Appellee showed that Reed & Co. of Bedford were the agents and Richey solicited insurance for them; Reed & Co. would write and countersign the policies and give them to Richey who delivered them and collected the premiums from the insured. At the time this policy was delivered, Richey was informed as to the exact ownership of the furniture; he told appellees the policy was good and covered the furniture.

Where a duly authorized insurance agent, in the due prosecution of the business of his company, employs another as a subagent to solicit insurance, and perform other acts in relation thereto, the acts of the subagents within the scope of the delegated authority, have the same effect as if done by the agent himself. This rule was first stated in Swan v. Watertown Ins. Co., 96 Pa.

37, and was restated in the similar case of McGonigle v. Susquehanna Fire Ins. Co., 168 Pa. 1. In the latter case, an agency was established at Wilkes-Barre, with Miller as agent. Miller accepted the assistance of one Thomas, an itinerant solicitor of insurance in the vicinity. He looked up properties, took verbal applications and brought them to Miller. After they were accepted, Thomas delivered some of the policies and received the premium. The valuation of the property in that case was fixed by Thomas, who had solicited the insurance, after conversation with the insured. After the acceptance of the insurance, the policy was delivered to the insured, and payment was made to Thomas, and some of it to Miller, the agent. The contest was over the statement of value. The court there held the knowledge of the subagent was knowledge of the company. The rule has been restated, with respect to payments of premiums to subagents, in Penna. Co. v. Home Life Ins. Co., 295 Pa. 286, 289; and it has been recognized in this respect in a vast number of our cases, from Universal Fire Ins. Co. v. Block, 109 Pa. 535, to Trancontinental Oil Co. v. Atlas Assurance Co., 278 Pa. 558. The general textbook authority and decisions of other states support this rule. See 2 Couch on Insurance, section 505; Joyce on Insurance, section 396, and 32 Corpus Juris 1068, 1330.

The facts here are almost identical with those in Carpenter v. The German-American Ins. Co., 135 N. Y. 298, 31 N. E. 1015. It was there said: "We have held that notice to such a subagent, while engaged in soliciting insurance, of any fact material to the risk, and which affects the contract of insurance, is notice to the company, and binds the company to the same extent as though it had been given directly to the agent himself."

The reason for the rule has been well expressed in Phœnix Ins. Co. v. Spiers, 87 Ky. 285, 8 S. W. 453: "He usually represents a company remotely located. Its patrons in his vicinity naturally look to him for direction generally as to the insurance obtained through him.

He is regarded as having full power in reference to it, being usually the only man upon the ground having anything to do with it. The persons insured in his company, with few, if any, exceptions, would, in the absence of notice that his powers were limited, regard his statement as to any matter relative to such insurance as authoritative, and any notice to him as to it as sufficient. They rarely know anything of the company, or of its officers, who issue the policies, and look to the agent through whom they have obtained the insurance as the complete representative of the company in everything connected with that insurance. If they did not consider that they were authorized to do so, it would undoubtedly create distrust and cripple the business."

The contract has been entered into in good faith by an agent, who thought it was right, with an insured who believed his word, for a company that has received all the benefits. To refuse to honor it under such circumstances would be manifestly wrong. While it is conceivable certain regulations should be made to prevent fraudulent acts in relation to insurance, here there is not the slightest allegation of fraud. Unless such acts of subagents are upheld, innocent parties would be a prey to unscrupulous agents and possibly their companies. The cases cited by appellee are easily distinguishable, and we need not go into them in detail. Under these circumstances the acts of Richey may be regarded as those of the agent and binding on the company.

The insurer also contends that as the policy insured three persons whose interest in most of the property was joint and several, but as this is a joint action, it cannot be sustained because part of the property was owned in severalty. The amended pleadings which raised this question were not filed until after the first trial and after the time had expired for instituting suit under the policy, though defendants knew when the statement was filed that a small part of the property was owned in

severalty; yet they waited as stated above, until the limitation in the policy would have defeated a separate action for this insurance; the laches of the company prevents such claim from being now raised. As the parties elected to include all the property, owned jointly and severally, in one policy, as the suit is on that policy, since the company knew that a small part of the property was owned individually, we cannot say at this late date that the court below committed error in refusing to separate the action. There was no fraud or concealment in the insurance of the individual property of one of the insured and all rights will be foreclosed in this action.

We considered the effect of the appraisal agreement when the case was here before, and for reasons set forth in the prior opinion, held that since the award covered the building only, it was not conclusive. The agreement having contemplated an arbitration of the amount of the loss sustained on the building, merchandise, store fixtures and household furniture, it was not error for the court to exclude evidence tending to show why such arbitration was not in fact made. The oral evidence offered to show that only the building was to be appraised was not sufficient to set aside the agreement, nor could it be used to contradict or vary its terms. Arbitration proceedings are a quick and easy mode of obtaining justice, their purpose being to settle speedily the amount of loss occasioned by the fire. According to appellants, the agreement was intended to create additional litigation, part by arbitration and the remainder by suit generally. It was not denied there was a loss on the store fixtures, furniture and merchandise, but it was argued because they were not physically present there could be no arbitration award as to them. Why not? If a loss could be shown in court it could be proved before arbitrators. The arbitration agreement was made for the purpose of fixing the loss on all property destroyed. If there was none it should be so found, if there was it should be

stated. The mere fact that the property was not in existence will not relieve the arbitrators of the duty of determining the loss. Property may be entirely destroyed by fire but its value may be shown. This being so, since the award did not follow the agreement, it was not conclusive, and the court below properly so ruled.

Judgment affirmed.