## Willits *v.* Camden Fire Insurance Association, Appellant.

564

Argued November 9, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John B. Cupp,* with him *John E. Cupp,* for appellant.

*H. C. Hicks,* with him *Harry Swank Phillips,* for appellee.

OPINION BY KELLER, P. J., January 29, 1937:

The defendant company on January 10, 1934 issued its policy of insurance to the plaintiff insuring the dwelling on his farm against loss or damage by fire for one year in the amount of $1,000. The dwelling was totally destroyed by fire on June 28, 1934, the loss being in excess of $1,000.

The insurance company having refused to pay, plaintiff brought this action on the policy.

The defense relied on by the insurance company was

that it was not liable because of the following provision in the policy: "Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage occurring (a) while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy ......" It averred in its affidavit of defense that at the time the plaintiff made application for and received the policy in suit, the *defendant* [clearly a mistake for *plaintiff*] held a policy —No. 12665—issued by the Blooming Grove Mutual Fire Insurance Company, insuring him against loss or damages by fire in the amount of $1,000 to the same building insured by this defendant's policy, and that both policies of insurance were in full force and effect on the date of the fire. It further averred that the plaintiff did not give notice to the defendant of the "existing valid policy of Blooming Grove Mutual Fire Insurance Company" at the time he made application for and received the policy of defendant, and that the policy contains no endorsement permitting other insurance.

The evidence of the plaintiff, who was called as if upon cross-examination by the defendant, as to what occurred when the policy in suit was applied for and taken out, was as follows: "Q. When the agent of the Camden Company was negotiating with you for you to take out this policy of insurance with the Camden Company, did you notify that agent of the policy with the Blooming Grove? A. Yes ...... Q. Well, Mr. Willits, tell us what you told the agent about the Blooming Grove policy ...... A. I told him there was other insurance carried by the Jersey Shore Trust Company, but that now, at the time, it had lapsed and there was no insurance on it. Q. Did you tell him what company it was in? A. Yes." As this testimony was not rebutted by other evidence or circumstances,

defendant is bound by it: *Dunmore v. Padden,* 262 Pa. 436, 105 A. 559; *Burke v. Kennedy,* 286 Pa. 344, 133 A. 508.

The evidence as respects the Blooming Grove policy may be summarized as follows:

When the plaintiff bought his farm he took title subject to a mortgage of the Jersey Shore Trust Company for $1,800. On April 14, 1931, at the direction of the mortgagee, he applied for insurance on his dwelling house and barn to Blooming Grove Mutual Fire Insurance Company, a mutual company, $1,000 on each. The policy was issued the same day. It contained numerous provisions not here material, but provided for payment by the insured of all assessments levied by the Directors of the Company. The constitution, which was printed as a part of the policy, provided that if payment of an assessment was not made within thirty days after the date of notice thereof, all liability of the company should cease and the policy be null and void. The application signed by the plaintiff agreed to these terms. The policy contained a standard mortgagee clause, of which the following provisions are material:

"Loss or Damage, if any, under this policy, shall be payable to JERSEY SHORE TRUST COMPANY as first mortgagee, (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property ...... Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand pay the same......

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall,

to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of mortgagee (or trustee) to recover the full amount of its claim."

The policy was delivered to Jersey Shore Trust Company, in whose possession it has since remained.

At the time the plaintiff applied for the insurance policy in suit his insurance under the policy in Blooming Grove Company had lapsed or 'run out', as he expressed it, because he had not paid an assessment duly made by the directors of the company, within thirty days after receipt of the notice of such assessment. As to him, the policy by its terms and conditions, was then void, and he had no existing contract of insurance on the dwelling.

Much of the controversy between these parties is due to the fact that the defendant failed to realize that, by including in its policy the standard mortgagee clause, the Blooming Grove Company not only insured Willits, this plaintiff, against loss by fire, but also created in favor of the mortgagee, Jersey Shore Trust Company, a separate, distinct and independent contract of insurance: *Knights of Joseph B. & L. Assn. v. Mechanics' Fire Ins. Co.*, 66 Pa. Superior Ct. 90, 94; *Overholt v. Reliance Ins. Co.*, 319 Pa. 340, 344, 179 A. 554. The mortgagee clause is not an assignment of the policy or a simple loss payable clause. *Ibid.* As long as Willits paid his assessments and did not, by any other act or neglect invalidate or render void the insurance contract with him, the independent contract with the mortgagee imposed no additional

liability on the company, but upon any act or neglect of the insured mortgagor or owner, which rendered void the insurance as to him, the independent contract with the mortgagee immediately imposed on the company a liability separate and distinct from that to the mortgagor or owner. Thus, although the policy was rendered void as to Willits by his failure to pay the assessment within thirty days after notice of its levy and he, consequently, had no existing contract of insurance on the property on January 10, 1934, when he applied for the insurance in suit, the independent contract of insurance with the mortgagee remained in full force and effect until notice of Willits' non-payment was given it and demand for payment of the assessment was made on it. Payment of the assessment by Jersey Shore Trust Company to Blooming Grove Company, in response to such demand, on February 23, 1934,—after the issuance of the policy in suit—kept the independent contract of insurance with the mortgagee in force, but did not serve to revive, reinstate, or put again into force, the insurance contract with Willits; and it makes no difference in this respect, that Willits, in order to prevent a foreclosure of the mortgage may have paid or reimbursed the mortgagee to the amount of such assessment. Blooming Grove Company recognized this independent contract, after the fire, by paying the mortgagee, Jersey Shore Trust Company, the insurance covering the burned dwelling, but in doing so, it took, with the consent of the mortgagee, an assignment of ten-eighteenths of the mortgage, thus asserting its denial of any existing contract of insurance with Willits. The situation, in legal effect, was no different from what it would have been if Willits had cancelled the Blooming Grove policy, say, on January 1, 1934, and Jersey Shore Trust Company had immediately taken out a policy insuring its separate mortgage interest. The existence of such a

policy in favor of Jersey Shore Trust Company would not have had any effect on the policy issued on January 10, 1934 by this defendant to the plaintiff.

The plaintiff, therefore, in his representations to the defendant's agent not only stated the facts correctly but also drew the correct legal conclusion from them; and, if the evidence produced was believed by the jury he was entitled to a verdict.

As additional ground for this conclusion, we are in accord with the position of the learned court below, that the plaintiff, prior to the issuance of the policy in suit, having given the defendant company's agent, who was authorized to countersign and issue policies of insurance, the facts in reference to the Blooming Grove Company policy, his knowledge binds the company, in the absence of fraud, which is not here alleged, and estops the company from setting up that ground of invalidity as a defense to the action on the policy: *Russell v. Farmers Mutual Fire Ins. Co.*, 272 Pa. 1, 115 A. 835; *Arlotte v. National Liberty Ins. Co.*, 312 Pa. 442, 447, 167 A. 295; *Gough v. Halperin*, 306 Pa. 230, 159 A. 447; *Isaac v. Donegal & Conoy Mut. Fire Ins. Co.*, 308 Pa. 439, 443, 162 A. 300; *Ronca v. British & Foreign Marine Ins. Co.*, 314 Pa. 449, 452, 453, 172 A. 475; *Davis v. Home Ins. Co.*, 74 Pa. Superior Ct. 92, 94; *First Nat. Bank v. Newark Ins. Co.*, 118 Pa. Superior Ct. 582, 586, 180 A. 163.

The assignments of error are overruled and the judgment is affirmed.