## National Mutual Assurance Company v. Gardner

*George O. Wagner, Ralph J. Johnston* and *Roy B. Pope,* for plaintiff.

*Eugene Eves,* for defendant.

KREISHER, P. J., January 10, 1952.—Plaintiff, on November 6, 1948, issued a policy of automobile collision insurance insuring the General Acceptance Corporation as owner and Kenneth W. Gardner, defendant, as purchaser and lessee of a 1941 Pontiac four-door sedan, with the usual provision of $50 deductible applicable to each collision or upset. The unpaid balance at the time the policy was issued was $300, and provided for monthly installments of $28.36. There is no allegation in this case of bailor—bailee relation-

ship between the owner and purchaser set forth in the policy of insurance.

On January 2, 1949, defendant was involved in an accident, which was caused solely by the negligence of one Anthony Statute, of Scranton, Pa., after which defendant's car was placed in a Scranton garage for repairs, which amounted to $440.45.

On April 23, 1949, defendant, in consideration of $187.50, executed and delivered to Anthony Statute a general release, which was worded as follows:

"KNOW ALL MEN BY THESE PRESENTS THAT I, KENNETH W. GARDNER, of Danville, Pennsylvania, for and in consideration of the sum of One Hundred Eighty-seven and 50/100 Dollars ($187.50) to me in hand paid do hereby remise, release and quit claim and forever discharge Anthony Statute from any and all claims whatsoever on my own behalf, or on behalf of any of my family, for damages resulting from an accident which happened on or about January 2, 1949, in Susquehanna County, Pennsylvania."

On April 30, 1949, plaintiff paid to one Mr. Williams, at the garage where defendant's car was taken to be repaired, the sum of $390.45, which is the difference between the full bill of $440.45, less the $50 deductible, as called for in the insurance policy. Thereupon, defendant executed in favor of plaintiff company a release and subrogation agreement, whereby defendant subrogated his claim against Anthony Statute to the extent of $390.45.

The policy of insurance, under paragraph 9 of the conditions contained on the back of the policy, provides as follows:

"In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary

to secure such rights. The insured shall do nothing after loss to prejudice such rights."

Plaintiff made payment to the repair man on April 30, without knowledge of the aforementioned release executed by defendant on April 23rd. Therefore, plaintiff instituted this action in assumpsit to recover from defendant the amount they paid the repair man. The foregoing facts are set forth in plaintiff's complaint, and are not specifically denied in defendant's answer.

Rule 1034 of the Pennsylvania Rules of Civil Procedure now provides for a prompt judgment to be entered on the pleadings, where it appears there are no facts in dispute, and Rule 1032 provides that judgment on the pleadings may be entered for "failure to state a legal defense to a claim." From an examination of the law of Pennsylvania as applied to the above-mentioned undisputed facts, it appears that plaintiff is entitled to have the court grant the motion for judgment on the pleadings for the full amount of its claim, with interest from the date of the payment made by it, since the aforementioned pleaded release was dated prior to the payment. The policy of Pennsylvania in cases of this kind has been announced and uniformly followed in both the Superior and Supreme Courts. The leading case in the Superior Court appears to be Manley v. Montgomery Bus Company, Inc., et al., 82 Pa. Superior Ct. 530, and followed in the case of Commercial Casualty Insurance Company v. Leebron, 90 Pa. Superior Ct. 201, and The Union Insurance Society Limited v. Saller, 95 Pa. Superior Ct. 41. The leading Supreme Court case is that of Illinois Automobile Insurance Exchange v. Braun, et al., reported in 280 Pa. 550.

It is the contention of defendant in this case that these aforementioned authorities do not apply, as it is pleaded in paragraph 12 of the answer that the release given by defendant to the tortfeasor was for liability

over and beyond the cost of repairs to the vehicle, and at the argument this was explained to take care of the $50 deductible that defendant had to pay the repair man, certain personal injuries and loss of use of the automobile while it was being repaired, and, therefore, defendant did not intend by said release to defeat plaintiff of its rights against the tortfeasor. This contention is answered, however, by the fact that the release as above quoted cannot be altered by parol testimony, but it must be taken by what appears upon its face, and by what language is contained therein. If defendant had so worded the release which he gave to the tortfeasor, which he could legally have done, thereby preserving to plaintiff its right of action against the tortfeasor, a different result would be arrived at in this case. In the case of Insurance Co. of N. A. v. Fidelity, etc., Co., 123 Pa. 523, it was held that the insured could make a settlement and give a release to the tortfeasor, which would not extinguish the insurer's right of action against the tortfeasor. Unfortunately, however, in the case before the court defendant executed a general release, and thereby defeated the insurer's right to assert its claim of subrogation against the wrongdoer. See Wolverine Insurance Co. v. Bradford, 29 Erie 293.

Defendant also contends that judgment should not be entered for the full amount of plaintiff's claim by reason of the fact that defendant's settlement with the wrongdoer is less than the claim, whereas in the appellate court cases relied upon by plaintiff, the settlement or verdict was usually larger than the property damage claim, and therefore, defendant was not so obviously injured by the reimbursement. We do not, however, believe that the amount of settlement and the amount of the property damage was the basis of the principle announced in those cases, but rather it

was because of defendant violating the contract of insurance and wrongdoing.

Defendant also contends that if judgment is entered upon the pleadings, credit should be given for the amount of the insurance premium paid, which, from the pleadings appears to be $70. This for the reason that it would be an unjust enrichment to plaintiff company to permit it to have the benefit of a $70 premium upon a policy of insurance for which they are by law declared to be nonliable. The court is inclined to agree with this contention as it appears to be just and equitable, although we are unable to find any authority for this proposition. We will in making our final order affirm this proposition purely upon the equity of the same.

Defendant also contends that judgment should not be entered on the pleadings, but that the case should be tried before a jury. As we view the pleadings in this case, there are no questions of fact for a jury to pass upon, and the matter, as is now stands, is purely a question of law which the court may properly decide. Defendant contends that a jury should be permitted to determine the effect of the release given by defendant to the tortfeasor. However, we are of the opinion that it is not permissible to admit parol evidence to vary or change the terms of this written instrument, nor do we believe that it is a question for the jury to decide what effect the execution and delivery of this release had with respect to the rights of the parties. The question of the effect of a release must be determined by an examination of the instrument itself, as parol testimony as to what the parties intended is inadmissible: Highlands v. Cumberland Valley Farmers' Mutual Fire Insurance Company, 203 Pa. 134.

There are a number of cases to the effect that had plaintiff in this case refused to pay this repair bill after the execution and delivery of this general release,

this defendant in an action on the policy against the insurance company would have been denied recovery by reason of the execution and delivery of the release.

The right of subrogation is based upon equitable principles, and the rights of the subrogee can rise no higher than the rights of the subrogor, and any defense against the subrogor may be interposed and is effective against the subrogee. It is uniformly held that there can be only one cause of action against a wrongdoer in cases of this nature, because the subrogee's cause of action against the wrongdoer is predicated upon the contract of indemnity, and said subrogee does not have a separate and distinct interest or claim as in the case of bailor-bailee relationship, and a wrongdoer cannot be subjected to a multiplicity of suits for the same claim.

There are cases in other jurisdictions holding that a release of this nature does not prevent the subrogee from asserting its claim against the wrongdoer, holding that such a release is against public policy and a fraud which the courts will not permit to be perpetrated: 105 A. L. R. 1433. However, as harsh as this doctrine may seem, the courts of Pennsylvania have uniformly held that an insured who by his conduct defeats the insurer from asserting its rights of action, is liable for any payments received from the insurer. This is in accord with the aforementioned appellate court cases, as well as our lower court cases. To mention one is the Fidelity & Casualty Co. v. Rosen, reported in 28 Lack. Jur. 153, wherein it is stated by Watson, J., on page 156:

"The plaintiff, after paying the loss of $1,135.00 to the defendant was entitled to be subrogated to the right of the defendant against the Scranton Railway Company. . . .

"The release to the Scranton Railway Company by the defendant destroyed the benefit of the subrogation

clause in the policy, and it was by that means put out of plaintiff's power to assert any claim under the covenant as against the Scranton Railway Company. . . .

"The defendant could not settle with the Scranton Railway Company except with the acquiescence of the plaintiff without putting himself in peril with the plaintiff. . . .

"The plaintiff is entitled to recover from the defendant. . . the amount paid to the defendant, with interest from . . . the date of the release given by the defendant to the Scranton Railway Company."

We do not deem it is necessary to further quote from the aforecited cases, which clearly and definitely announce the principle of liability under these facts, and clearly rule this question. The reasons for the principle are fully and at length set forth in those opinions, and we are unable to find any case in Pennsylvania, with the exception of the early case of Kennebec Ice & Coal Co. v. Wilmington & N. R. Co., 14 W. N. C. 554, which does not follow the doctrine announced in the Illinois Automobile Insurance Exchange v. Braun case.

We agree with counsel for defendant that the paragraphs relating to subrogation contained in the policy are in very fine print, and no doubt never read by defendant; and further, that the release given in this case was given prior to the execution of the subrogation agreement, and that, therefore, this defendant did not at the time of the execution of the general release to the tortfeasor have knowledge or notice of the relation of the insurer in the case through his subrogation assignment, but it appears from the cases read that actual notice is not necessary because the contract of insurance must be taken as a whole, and all of the provisions contained therein must be held to be binding upon the parties thereto, and therefore, it is held that defendant at least had constructive notice of the rights of the insurer, and that it was his duty to save and

preserve those rights, and do nothing after loss to prejudice such rights. Defendant could and should have protected himself in his dealings with the tortfeasor, and by his failure to take the necessary precaution, he is, under the law, as we view it, liable for the consequences.

### Order of Court

And now, to wit, January 10, 1952, judgment is entered in favor of the National Mutual Assurance Company, plaintiff, against Kenneth W. Gardner, defendant, in the sum of $346.25, and the prothonotary is directed to enter judgment in favor of plaintiff and against defendant in this amount.