## Robinson *v.* Empire Mutual Fire Insurance Company of Pennsylvania, Appellant.

Argued January 10, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Gerald J. Haas,* with him *Gerber & Galfand,* for appellant.

*Francis Logan,* with him *Robert C. Duffy,* for appellee.

Opinion by Mr. Justice Musmanno, March 14, 1955:

The defendant insurance company appeals from a refusal of the court below to grant a new trial or judgment n.o.v. on a verdict gained by the plaintiff on a policy of insurance against loss by theft.

The genesis of this lawsuit was a telephone conversation in March, 1952, between the plaintiff and a clerk in the office of an insurance broker when the plaintiff described the equipment to be insured as a 1949 Freuhauf trailer, 32 feet long with a new 1952 torsion unit. Whether the girl in the broker's office misunderstood *Freu,* the first syllable of the word "Freuhauf" as the adjective "new," or whether she misapplied the "new", which correctly described the torsion unit, to the tractor which, in fact, was not new, was not developed at the trial. It is fact, however, that the insurance policy issued by the defendant company described the trailer as "new" and listed the cost of the trailer as $6,000. Upon receiving the policy the plaintiff telephoned the girl about the errors appearing in the document and she replied that necessary corrections would be made. Before the changes were effected, the trailer disappeared and the plaintiff notified the police department of the theft. The police blanketed the area with teletype directions to all law agencies to locate and pick up the absconding vehicle but it was never recovered.

The insurance company received with some skepticism and even antagonism the plaintiff's claim for indemnification under the policy and when the plaintiff refused to sign a statement which the insurance company agent had prepared, the agent (a certain Hass-

linger) closed the door on any attempted settlement with the well-known, if not ominous, "All right, go ahead and sue us."

And the plaintiff sued.

No formal proof of loss was filed but under the circumstances none was required: *Simons v. Safety Mutual*, 277 Pa. 200.

The plaintiff called an expert witness who testified that the value of the stolen trailer was $3,500—and that was the amount of the verdict.

The insurance policy carried the provision: "8. Declaration: By acceptance of this policy the insured agrees that the statements in the declarations are his agreement and representations, that this policy is issued in reliance upon the truth of such representations . . ."

General Condition 5 of the policy reads: "This entire policy shall be void if the insured has . . . misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud, or false swearing by the insured touching any matter relating to this insurance or the subject matter thereof, whether before or after a loss."

The defendant contends that since it is admitted the trailer was not new and that the plaintiff had not paid $6,000 for it, the plaintiff thus made misrepresentations and therefore cannot recover. The learned and able court below permitted the plaintiff to relate what had occurred in the telephone conversation between the plaintiff and the insurance broker's clerk. The defendant assigns this as error, arguing (1) that by allowing oral testimony to alter, contradict or vary the terms of a written policy is to invite fraud; (2) that the defendant company cannot be bound by errors made by the insurance broker, not the agent of the de-

fendant; (3) and that Paragraph 3 of the policy precludes such change from being binding on the insurance company, namely, "3. Changes: No notice to any agent or knowledge possessed by any agent or any other person shall be held to effect a waiver or change in any part of this policy nor estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof."

Wondrous as is the telephone, people generally have not learned to speak or to listen over it with the precision which can characterize a face-to-face conversation. A message taken by a clerk and approximately reproduced on paper does not have that phonographical certitude which prevents the originating speaker from asserting that an error has been made. The criterion in such a situation—as is true in nearly every controversy involving human misunderstanding—is the bona fides of the transaction. In *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 563, we said: "Mere mistakes, inadvertently made, even though of material matters, or the failure to furnish all details asked for, where it appears there is no intention of concealing the truth, does not work a forfeiture, and a forfeiture does not follow where there has been no deliberate intent to deceive, and the known falsity of the answer is not affirmatively shown."

The concept embodied in the above expression was even more cogently expressed in *Skruch v. Metro. Life Ins. Co.*, 284 Pa. 299, 302, where this Court said: "Whether true answers were made, and whether the answers as made were correctly written down by the agent of the insurance company, and the good faith of the party making the answers to the best of his knowledge and belief, are questions which go to the very essence of the insurance risk, and *parties should not be*

*denied the right to have such matters determined be-
fore a proper tribunal, unless they have covenanted
otherwise.*" (Emphasis supplied.)

If the insured in these cited cases was allowed, as
he was, to show that his hand, in writing what later
proved to be misrepresentations, was not guided by a
desire or intent to deceive, with what greater force in
law and justice should an insured be permitted to point
out the misunderstanding which occurred in the trans-
mission and reception of a telephone message, especial-
ly since the defendant company did not show that the
insurance broker was not also acting as its agent?

Nor does Paragraph 3 of the policy (above quoted)
preclude recovery even though the change, as required
by the provision, was not countersigned by the com-
pany. By its verdict the jury found that the plaintiff
had not misrepresented facts to the broker's clerk who
also acted in behalf of the insurance company, that the
inadvertent error was immediately called to the atten-
tion of the defendant's agent, and that no corrected
policy issued from March, 1952 up to the time of the
loss in May, 1952, although the defendant company ac-
cepted premiums from the plaintiff in the sum of $400
from March to the end of April, 1952. In those cir-
cumstances the defendant may not declare a forfeiture
of the policy merely because the dictated corrections
were not written into the policy.

A study of the record discloses no reason to dis-
card the verdict of the jury, either by a judgment n.o.v.
or by granting a new trial. The judgment of the lower
court is therefore affirmed.

Mr. Justice BELL dissents.