## Turko v. Pennsylvania Threshermen & Farmers' Mutual Fire Ins. Co.

*Joseph E. Gallagher*, for plaintiff.

*Nogi, O'Malley & Harris*, for defendant.

HOBAN, P. J., May 20, 1955.—The action is assumpsit and the claim is for reimbursement by defendant to plaintiff for damages to plaintiff's automobile caused by a collision with another automobile. Plaintiff's theory is that the facts establish that defendant company had assumed the risk of indemnifying plaintiff against loss caused by a collision. There was no essential conflict in the evidence as to any pertinent fact and when the evidence closed both plaintiff and defendant filed requests for binding instructions. The trial judge thereupon withdrew a juror and reserved decision upon the points submitted.

The undisputed facts are as follows:

John Himchak, of the Borough of Olyphant, this county, is a duly licensed insurance broker. His office is at home and he works at this occupation as a part time enterprise. All the insurance which Himchak secures or is asked to place is written through the general insurance agency of Tom E. Evans, in Scranton. Evans is an agent for a number of different companies in the casualty and fire insurance field, including among others defendant company. Himchak has been a broker since 1934 and Evans has been an agent for defendant company since 1946. Himchak has some 200 accounts for which he acted as broker, placing the insurance through the Evans Agency, and during the year that gave rise to this controversy Himchak placed approximately 50 pieces of business through Evans. Of the 200 accounts which Himchak maintains only 8 were placed by Evans in defendant company. Evans had no authority to designate subagents for defendant company and Evans did not at any time designate Himchak as a subagent for defendant or any other company.

Prior to March, 1953, plaintiff carried insurance brokered through Himchak and with defendant company, which was written by the Evans Agency covering bodily injury liability, property damage liability and medical payments which plaintiff might have incurred as to others by reason of his operation of a Chevrolet car covered by the policy. A replacement policy was written for this same coverage through the Evans office, dated March 3, 1953, effective March 13, 1953, for a period of one year.

By endorsement no. 1, added to this policy, effective March 25, 1953, but issued and countersigned April 2, 1953, comprehensive fire and theft was added to the coverage. By endorsement no. 2, effective October 27,

1953, countersigned and issued October 30, 1953, the existing coverage was transferred from the Chevrolet car to a Dodge car.

In each of the foregoing endorsements additional premiums were charged for the balance of the period of the coverage to the end of the policy year. The method of procuring insurance was for plaintiff or some one for him ordering the additional coverage from Himchak. Himchak would then telephone to Evans, who would make the coverage effective as of the date the order was received and the endorsement would subsequently be mailed to Himchak, who in turn mailed the endorsement to plaintiff and billed him for the premiums due. The same procedure was followed as to the issue of the basic policy.

At 3:55 p.m. on Saturday, November 21, 1953, Mrs. Turko, mother of plaintiff, at plaintiff's request, called Himchak and requested him to provide for collision insurance on the plaintiff's car. Himchak said o.k. Himchak did not at the time call Evans Agency and place the insurance because at that time he was preparing to go to a social engagement. Turko, who had been visiting his mother's home, went on his way and about 11 p.m. that same night, near Binghamton, New York, was involved in a collision, resulting in damage to his car to the amount complained of in this lawsuit.

On Monday, November 23, 1953, Himchak in the meantime, having been informed of the accident, called Evans and reported to him that he had been requested before the accident to place collision insurance, reported the fact of the accident and asked Evans if the insurance could be considered as effective as of the previous Saturday. Evans replied that he could not accept the risk in view of the accident.

The Turko car was so badly damaged that it was turned in for salvage to the dealer from whom he had

purchased it in Binghamton, New York, and Turko immediately purchased from the same dealer another car. On this last car, again through Himchak, Turko ordered collision insurance to be placed. Evans thereupon prepared endorsement no. 3 to the basic policy, adding collision insurance, which endorsement was made effective December 5, 1953, but was not countersigned and issued until January 15, 1954. The delay in issue was caused by awaiting receipt of the serial number of the newly acquired car.

The Pennsylvania Threshermen & Farmers' Mutual Fire Insurance Company and the Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company are allied companies but write single policies covering all classes of risks, allocating the premiums to the appropriate company in accordance with the character of the risk assumed. It is in evidence that collision insurance is not written by any company as a separate risk but is always written in combination with fire and theft insurance.

The question at issue is whether or not Himchak, in agreeing to place collision insurance for plaintiff on the afternoon of November 21, 1953, was a subagent for defendant company. If Himchak can be considered to be a subagent, then binding instructions should have been given for plaintiff and judgment should now be entered on the whole record. If Himchak was not such a subagent, then binding instructions should have been given for defendant and judgment should now be entered for defendant on the whole record.

An insurance broker is defined as a person who for compensation acts or aids in any manner in obtaining insurance for a person other than himself, and by the terms of his license he is authorized to negotiate contracts of insurance with any insurance company . . . or the agents thereof . . . authorized by law to trans-

act business within this Commonwealth. See The Insurance Department Act of 1921, Act of May 17, 1921, P. L. 789, secs. 621, 622, 40 PS §§251, 252. There is plenty of authority for the proposition that a broker is the agent only for the person who procures his services—in most cases the customer—and if the broker fails to "negotiate" the insurance required, his customer or the broker himself must bear the loss, if any there be. But it is also recognized that there are situations in which a person not duly appointed or licensed as such may be considered to be a subagent and thus impose liability on the carrier, even though the person who does the specific action, ultimately requiring imposing liability on a carrier, would not ordinarily be authorized to contract for such liability. See Harris v. Meyers, 160 Pa. Superior Ct. 607; Isaac v. D. & C. Mutual Fire Ins. Co., 308 Pa. 439.

But the difficulty with the factual situation is that I can see nothing to tie the action of Himchak in agreeing to place a new risk to defendant company. It is not like the action of a broker in assuring a customer as to the coverage involved in a policy already written, as appeared in Isaac v. Fire Ins. Co., supra, or the mistake of an agent's clerk as in Harris v. Meyers, supra. See also Robinson v. Empire Mutual Fire Ins. Co. of Pa., 380 Pa. 499. True, as a matter of trade custom Evans, if he had received the order in time, would probably have placed the collision insurance as a matter of convenience with the fire and theft insurance already written by defendant company. But Evans was not required to do so. He could as well have taken the whole risk and placed it with some of his other companies, and there is nothing in the record to indicate that Himchak in any way could direct Evans to place the coverage according to Himchak's desires. I can come to no other conclusion but that Himchak

as a broker in this particular instance failed to "negotiate" a contract of insurance for this particular risk with this defendant company. The fact that the agent and the company subsequently accepted and added to the original policy a similar risk as to an entirely different car has nothing to do with the case.

On the record, therefore, I am of the opinion that binding instructions should have been given for defendant and that now judgment must be entered in favor of defendant.

### Decision

Now, May 20, 1955, a motion for binding instructions on behalf of defendant having been heretofore made and the point reserved, judgment is directed to be entered in favor of defendant and against plaintiff.

Eo die, exception noted for plaintiff.

### On Motions for Judgment n. o. v. and New Trial

HOBAN, P. J., December 23, 1955.—After plaintiff and defendant each submitted requests for binding instructions, Hoban, P. J., trial judge, withdrew the case from the jury, and subsequently rendered a decision affirming defendant's point for binding instructions and directed judgment to be entered for defendant.

On the rules before us we may concede that in a proper case the award of a new trial would be procedurally correct. Our difficulty here is to find any basis for a jury question.

Plaintiff concedes that the statement of the undisputed facts contained in the written decision of the trial judge is correct, and on the basis of that statement we can find no room for a difference of opinion as to whether the broker, Himchak, was by implication or otherwise a subagent of defendant company when he accepted plaintiff's order to place collision insurance on plaintiff's automobile.

The clear factual situation is that the broker, Himchak, received and accepted an order from plaintiff to place collision insurance on the car, but did nothing about placing the risk until days after the loss occurred. The fact that the authorized agent, Evans, probably would have placed the risk with defendant company because of trade custom, and if Evans had accepted the risk at all, cannot create a permissible inference that Himchak as to this risk was a subagent of Evans or of defendant company. There are too many "ifs" involved, and any conclusion as to agency would necessarily have to be based on speculation and not on proof.

The subagency by implication cases cited by plaintiff all contained fact situations showing direct action by the authorized agents as to specific risks which indicated concurrence with or affirmance of the subagent's activities and so were considered to bind the principals by implication. We can find no such justification here.

Now, December 23, 1955, the rules for judgment non obstante veredicto in favor of plaintiff and for a new trial are discharged, the decision of the trial judge is affirmed and final judgment is directed to be entered for defendant.