6603

### GRAFTON v. PATRICK.

ESTOPPEL—CHATTEL MORTGAGES.—A mortgagee, after condition broken, mortgage of record, is not estopped from enforcing his mortgage on a horse against one who had traded for the horse from one not mortgagor without actual notice of mortgage, because he had seen the horse in possession of others than the mortgagor and heard that he had been traded several times, and had taken no step to give notice of his claim other than recording the mortgage.

Before PRINCE, J., Fairfield, September, 1906. Affirmed.

Action by Henry C. Grafton against S. R. Patrick. From judgment for plaintiff, defendant appeals on the following exceptions:

1. "For that his Honor erred in holding, on the first examination of plaintiff, when defendant's counsel attempted to prove by him that he had knowledge of the fact that the horse described in the complaint had been traded, after a breach of the condition of the mortgage, that such fact made no difference in plaintiff's rights. The error being that such fact was competent and relevant to show one of the elements of estoppel by conduct.

2. "For that his Honor erred in sustaining the objection of plaintiff's counsel to the testimony of defendant's witness, Daniel Hall, by whom it was proposed to establish that plaintiff knew the horse in question was being traded from one person to another, and never made any objection thereto, but remained silent, his Honor erroneously holding that estoppel could not arise as a matter of law in such a case, unless the plaintiff was present at the time of such trade. The error being that it is not necessary that the plaintiff should be present in order to raise an estoppel, if he had knowledge of such trade and allowed the persons to whom the horse had been traded to hold it out to the world as their property.

3. "For that his Honor erred in charging the jury that if the plaintiff held a mortgage of the horse described in the complaint, which was recorded in forty days, such mortgage was constructive notice, and 'the plaintiff was under no legal or moral obligation to chase around after that horse and warn the public not to trade for him; that he had a mortgage on him, because he had done all the law required him to do.' The error being that by such charge his Honor ignored the principle of law that a person be estopped from asserting a legal right by his conduct and silence when he ought to speak, or by allowing a person other than the mortgagor to hold himself out to the world as the owner of the mortgaged property after the condition of the mortgage had been broken.

4. "For that his honor erred in charging the jury as follows: 'Now, of course, if the plaintiff had been present when

the horse was traded and had heard a representation that there was no mortgage on the horse and didn't speak, that would have estopped him, because that would have been aiding and abetting the other man in swindling another man to whom he was trading the horse. He would't be allowed to assert a mortgage against the innocent purchaser. But, if he is not there, and doesn't know that such a representation was made, he is not called on to speak; he has done all the law required him to do when he placed it on record.' The error being that it is not necessary that the owner of personal property should be present when his property is traded or transferred, in order to raise an estoppel against him by conduct and silence; that an estoppel may be raised against an owner, even when he is not present, if he knowingly permits another to hold himself out to the world as the owner of the property in question, and takes no steps in a reasonable time, to assert his rights.

5. "For that his Honor erred in charging and instructing the jury as follows: 'In other words, if that is the horse Cunningham owned at the time he made that mortgage, if you find that, and find that that mortgage has been recorded and has not been paid, find for the plaintiff the horse in dispute or its value.' The error being that by such charge his Honor held and instructed the jury that there could be no estoppel against the mortgagee, even after the condition of his mortgage had been broken, if the facts stated by his Honor existed at the time the mortgagee brought his action to recover the mortgaged property.

6. "For that his Honor erred in not holding and charging the jury that, after the condition of a chattel mortgage had been broken, the mortgagee becomes the legal owner of the mortgaged property, and may be estopped in the same manner as any other owner of personal property might be estopped from asserting his legal rights.

7. "For that his Honor erred in confusing the defense of estoppel with that of innocent purchaser for value without notice, and in charging the jury as follows: 'A man is

entitled to his horse, no matter how many times it has been traded, provided he has a valid mortgage, and that mortgage has been put on record. If it was traded a thousand times, that wouldn't make any difference.' The error being that his Honor entirely ignored the principle of law that the legal owner of personal property, whether as mortgagee or otherwise, may be estopped from asserting his legal title thereto if he has knowingly permitted persons, other than the mortgagor, to hold themselves out to the world as the owners of such property."

*Mr. J. E. McDonald,* for appellant. No argument furnished Reporter.

*Mr. W. D. Douglass,* contra, cites: 59 Penn., 214; 12 S. C., 354; 45 S. C., 512; Code 1902, 3007; 48 S. C., 267; 56 S. C., 476.

July 25, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action to recover possession of a horse.

The complaint alleges that on the 15th of April, 1907, R. J. Cunningham executed and delivered to the plaintiff a mortgage on the horse in dispute, to secure payment of a note given that day in the sum of $88.00, and payable on the first of October thereafter; that the mortgage was duly indexed and entered of record; that the mortgage has not been satisfied; that the defendant thereafter took possession of the horse and wrongfully refused to deliver him to the plaintiff.

The defendant denied the allegations of the complaint, except the execution and record of the note and mortgage, and set up the following defense: That subsequent to the execution of the plaintiff's mortgage, the mortgagor, Cunningham, sold and traded the horse in question to one W. B. Dixon, who retained possession thereof as his own prop-

erty for one or two years; that thereafter Dixon traded the horse to one Daniel Hall or Leland Hall, who had possession thereof for one or two years; that thereafter the said Daniel Hall, or Leland Hall, traded the said horse to one Rogers, who held said horse for a considerable time, exercising all rights over the same; and that thereafter the said Rogers, for value received, sold or traded the said horse to the defendant. It is further alleged that the plaintiff, Grafton, lived in the same community with Dixon, Hall and Rogers, and frequently saw the horse in possession of the said parties, and that he permitted the parties to hold themselves out to the world as the owners of the horse, without objection on his part and without asserting any right of ownership thereto, before the same was sold to the defendant. By reason of these facts, the defendant alleged that the plaintiff was estopped from asserting any title to the said horse.

It was further alleged that the defendant purchased said horse from Rogers, who was in possession thereof, and paid the full value of the same, without any notice of plaintiff's claim.

The jury rendered a verdict in favor of the plaintiff for the horse, or, in case a delivery could not be had, then for $135.00, the value thereof.

The defendant appealed upon exceptions which will be set out in the report of the case.

Briefly stated, the question presented by the exceptions is, whether there was error on the part of his Honor, the presiding Judge, in ruling that the mere fact the plaintiff saw other persons in possession of the horse, and heard that they were trading it, did not impose upon him the duty of giving any further notice than that furnished by the record, unless he was present when the transactions were taking place with regard to the horse.

Section 3007 of the Code of Laws is as follows: "No voluntary postponement by the mortgagee to seize the personal property covered by any chattel mortgage, or bill of sale used as a chattel mortgage, after condition broken and

no acceptance of a part of the debt secured by the mortgage, or such bill of sale after condition broken, shall be construed to operate as discharging the mortgage, or bill of sale, or as reverting the title of the chattel or chattels in the mortgagor; but indulgence may be granted by such mortgagee to such mortgagor after condition broken, as on other securities, without prejudice or danger to any rights or remedies of the mortgagee in the premises, to collect or to seize the chattels at any time at his option."

This section is remedial in its nature and must be liberally construed, and its provisions are sufficiently comprehensive, to be applicable to the present case.

But, apart from the statute, the ruling was free from error.

The general doctrine is thus clearly stated in 11 Enc. of Law, 427-9 : "As a general rule, an estoppel may arise from silence as well as words; but this is only where there is a duty to speak, and the party upon whom the duty rests has an opportunity to speak, and, knowing the circumstances requiring him to speak, keeps silent; or, in other words, where his silence amounts to a fraud, actual or constructive. This doctrine proceeds upon the ground that he who has been silent as to his alleged rights when he ought, in good faith, to have spoken, shall not be heard to speak when he ought to be silent. It is not necessary that the duty to speak in such case should arise out of any agreement, or rest upon any legal obligation in the ordinary sense; it arises whenever the principles of natural justice require the disclosure. It may be stated as a general rule, that if a person having a right, and seeing another person about to commit, or in the course of committing, an act infringing upon that right, stands by in such a manner as really to induce the person committing the act, and who might otherwise have abstained from it, to believe that he consents to its being committed, he cannot afterwards be heard to complain of the act. This, it has been said, is the proper sense of the term 'acquiescence,' which in that sense may be defined as

'quiescence' under such circumstances as that assent may be reasonably inferred from and is no more than an instance of the law of estoppel by words or conduct.

"Thus, it has been held that if the owner of the goods stands by and voluntarily allows another to treat them as his own, by which means a third person is induced to purchase them *bona fide,* the former cannot recover them from the purchaser."

After the plaintiff placed his mortgage on record, he did not owe any further duty to persons having dealings concerning the horse, other than not to mislead them by his conduct.   He did not owe them the duty of giving them that information which the record of the mortgage disclosed, and the testimony does not show that he failed, in any other duty.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.