## Arlotte et al. *v.* National Liberty Insurance Company, Appellant.

Argued March 28, 1933. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Philip N. Shettig,* with him *Arthur A. Nelson,* for appellant.

*Frank P. Barnhart,* with him *Samuel DiFrancesco,* for appellee.

Opinion by Mr. Justice Drew, May 26, 1933:

Plaintiffs were the owners of a building used by them as a confectionery store and dwelling, situated in the City of Johnstown. On July 24, 1929, defendant, by its agent at that place, J. H. Stockton, insured this building and its contents for a period of three years against loss

caused by falling aircraft and also, by a rider attached to the policy, against loss caused by automobiles, motorcycles, or trucks. On August 13, 1930, a truck crashed into the building. The collision and a fire caused by the explosion of the gasoline tank of the truck resulted in extensive damage to the building and its contents. To recover the loss thus suffered, plaintiffs began this action. There was a verdict for plaintiffs, and from the judgment entered thereon defendant appealed, assigning as error certain portions of the charge, and the refusal of its motions for a new trial and for judgment n. o. v.

According to plaintiffs' witnesses, about a week after the accident plaintiffs orally notified Stockton of the loss and of their inability to find the policy, which, they thought, had been destroyed in the fire which followed the collision. Stockton thereupon told them that the policy covered loss by falling aircraft only, and did not cover damage caused by the collision of a truck with the building. Because of this statement, which they believed to be true, plaintiffs took no further steps at the time to prove their loss. On August 18, 1931, they found the policy in their safe deposit box, and only then discovered that it did cover the loss which had occurred. They informed Stockton at once, and, on September 8, 1931, furnished proofs of loss to him and defendant company. Defendant refused to pay, and plaintiffs thereupon commenced this action.

The policy provided that the insured should "give immediate notice in writing, to this company, of any loss or damage," and should "within sixty days after damage ......render to this company a proof of loss, signed and sworn to by the insured," and also that no suit or action on the policy should be maintainable "unless all the requirements of this policy shall have been complied with, nor unless commenced within twelve months next after the loss." Defendant contends that the failure of plain-

tiffs to comply with these conditions requires that judgment n. o. v. be entered in its favor.

It is a well settled rule of law that a party to a contract cannot escape liability under his obligation on the ground that the other party has failed to perform a condition precedent to the establishment of such liability or to the maintenance of an action upon the contract, where he himself has caused that failure. As stated in Williston, Contracts, section 677, "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." Thus, an insurer will not be permitted to take advantage of the failure of the insured to perform a condition precedent contained in the policy, where the insurer itself is the cause of the failure to perform the condition. Our decisions have recognized and followed this principle. In Fedas v. Ins. Co., 300 Pa. 555, the insurer, through its adjuster, stated to the insured that it would not pay the loss because, it claimed, the insured was criminally responsible for the fire. It was held that this act of the insurer precluded it from objecting to the failure of the insured to file proofs of loss within the time limited by the contract. Mr. Justice KEPHART, speaking for the court, said: "The utmost fair dealing should characterize the transactions between an insurance company and the insured. If the insurer, having knowledge of a loss, by any act throws the insured off his guard as to the necessity of performing some duty enjoined by the policy, the insurer should not be permitted to take advantage of the failure to act." Again, in Gough v. Halperin, 306 Pa. 230, the automobile liability policy involved required that the insured promptly give written notice of loss to the company or one of its authorized agents. The evidence for plaintiff was that the insured gave oral notice to the agent who countersigned and issued the policy, and that the agent told the insured, "That's all, you

notified the company; you don't have to worry anything about it; we will take care of it." In affirming the judgment for plaintiff, we stated, through Mr. Justice WALLING, "The company cannot take advantage of the insured's inactivity caused directly by the assurance of its own authorized agent." See also Jenkins v. Ins. Co., 282 Pa. 380, 384; Phila. Auto Finance Co. v. Ins. Co., 102 Pa. Superior Ct. 1, 5.

Turning now to the facts of the instant case, we find a situation which clearly demands an application of this doctrine. It was established by clear and satisfactory evidence that Stockton told plaintiffs that their policy did not cover damage caused by trucks, but only such as might be caused by falling aircraft. This statement was one of fact, not merely one of opinion. Plaintiffs relied upon it, and their reliance cannot justly be said to have been unreasonable. Since they were unable to find their policy, plaintiffs, Italians who cannot read English, naturally accepted the statement of the agent with whom they had dealt as to the loss covered. The matter was one which under the circumstances rested peculiarly within Stockton's knowledge, and they reasonably relied upon his positive statement as to the fact. Had it not been for Stockton's misrepresentation of the terms of the policy, all the conditions precedent to the maintenance of this action doubtless would have been performed by plaintiffs. Upon the principle above stated, defendant is precluded from taking advantage of the nonperformance of these conditions, if it is properly to be held responsible for Stockton's misrepresentation.

Defendant, however, argues that it should not be held responsible for Stockton's misrepresentation, on the ground that he had no authority to make such a statement. We think this argument takes much too narrow a view of the responsibility of an insurance company for the acts of a local agent such as was Stockton. Plaintiffs dealt solely with him in taking out their policy, and it was quite reasonable for them to accept as true his

statement as to what was covered by its terms. Stockton was defendant's only agent in the community. He had full power to issue and countersign policies and to collect premiums. As was said in Phœnix Ins. Co. v. Spiers, 87 Ky. 285, a local agent "usually represents a company remotely located. Its patrons in his vicinity naturally look to him for direction generally as to the insurance obtained through him. He is generally regarded as having full power in reference to it, being usually the only man upon the ground having anything to do with it. The persons insured in his company, with few, if any, exceptions, would, in the absence of notice that his powers were limited, regard his statement as to any matter relative to such insurance as authoritative, and any notice to him as to it as sufficient. They rarely know anything of the company, or of its officers, who issue the policies, and look to the agent through whom they have obtained the insurance as the complete representative of the company in everything connected with that insurance. If they did not consider that they were authorized to do so, it would undoubtedly create distrust and cripple the business." The above expression was quoted and approved by us in Isaac v. Ins. Co., 308 Pa. 439, where we pointed out that an agent with authority to countersign policies, such as Stockton, "may waive provisions such as those requiring permits for 'other insurance' (Davis v. Home Ins. Co., 74 Pa. Superior Ct. 92; Russell v. Farmers Mut. Fire Ins. Co., 272 Pa. 1) ; 'sole and unconditional ownership' (Jabs v. Lancaster Co. Fire Ins. Co., 101 Pa. Superior Ct. 498; Caldwell v. Fire Assn. of Phila., 177 Pa. 492; Damms v. Humboldt Fire Ins. Co., 226 Pa. 358; Clymer Opera Co. v. Flood City Mut. Fire Ins. Co., 238 Pa. 137) ; 'written endorsement of assignment' (Spry v. Farmers Mut. Fire Ins. Co., 101 Pa. Superior Ct. 49) ; 'written notice of loss' (Gough v. Halperin, 306 Pa. 230) ; 'endorsement of a transfer of decedent's ownership to another' (Thomas v. Employers Liability Assurance Corp., 284

Pa. 129; Kocher v. Kocher, 300 Pa. 206); 'additional insurance permits': Evans v. Metropolitan Life Ins. Co., 294 Pa. 406; Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475." So, here, there can be no doubt of Stockton's agency or that plaintiffs reasonably regarded his statement that the policy did not cover loss by truck as authoritative, and for that reason did not furnish proofs of loss or institute legal proceedings until they found their policy, over a year after the occurrence of the loss. We conclude, therefore, that defendant is bound by Stockton's misrepresentation, and that it cannot set up plaintiffs' failure to perform the conditions of the policy, caused by that misrepresentation, as a defense to this action.

The second branch of the case is concerned with the allowance of a recovery of $1,200 for a soda fountain contained in the building, under the clause in the policy providing for a coverage of $3,500 "on the buildings, additions and extensions, and on all permanent fixtures contained therein, or connected therewith, appertaining to the service of the building and used in the maintenance thereof." In support of its motion for a new trial, defendant contends that under this provision the fountain was not insured, and that therefore the trial judge erred in submitting to the jury the question whether the fountain was a fixture covered by the terms of the policy. That the learned judge had considerable doubt on this question is shown by the fact that he required the jury to return a special verdict covering it. This was wise under the circumstances. The jury found that the soda fountain was a fixture insured under the terms of the policy and that it had been damaged to the extent of $1,200. A general verdict was returned for $2,763.97, covering all damages. We need not concern ourselves with the question whether this fountain was a permanent fixture—that is not the question before us. The question for our decision is, was it such a permanent fixture as was insured by the terms of the policy? Was

it "appertaining to the service of the building and used in the maintenance thereof"? Of course it was not. Clearly this soda fountain was not such an article, and it could not have been the intention of the parties to include it by these words. However, counsel for plaintiff argue that the logical and grammatical construction is that the clause "appertaining to the service of the building and used in the maintenance thereof" limits only the preceding clause "connected therewith," so that the provision covers, first, all permanent fixtures "contained in" the building, and, second, those "connected therewith, appertaining to the service of the building and used in the maintenance thereof." This position is absolutely untenable. Logically and grammatically, and by its plain meaning, the qualifying phrase refers to the words "permanent fixtures," without distinction as to whether they are "contained therein" or simply "connected therewith." No reason for a difference in this respect between the two classes of permanent fixtures, those "contained therein" and those "connected therewith," has been suggested by counsel, nor can we discover any. There is no ambiguity in the language used, and no room for an application of the doctrine that an ambiguous expression in an insurance policy will be construed most strongly in favor of the insured. The learned court below clearly erred in submitting the question to the jury. The interpretation of the contract was for the court.

Since the special verdict shows that the jury included in its general verdict $1,200 and interest as damages for the soda fountain, the judgment can be corrected by a subtraction of this amount. It is therefore unnecessary to grant a new trial.

The judgment of the court below is modified by deducting therefrom the sum of $1,200, with interest from August 13, 1930, the date of the loss, to May 11, 1932, the date of the verdict; as so modified, the judgment is affirmed.