Rapochi et ux. *v.* Continental Insurance Company of New York, Appellant.

Argued March 3, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*H. C. McGrath,* of *Welles, Mumford, Stark & McGrath,* for appellant.

*Stanley F. Coar,* with him *H. D. Carey* and *David J. Reedy,* for appellees.

OPINION BY BALDRIGE, J., April 16, 1936:

In this action of assumpsit on a fire insurance policy, judgment was obtained by the plaintiffs in the sum of $2,149.52, and defendant appealed.

On December 1, 1931, the defendant, through its agent, Floyd J. Waters, issued an insurance policy covering a combination store and dwelling belonging to the plaintiffs, in the sum of $3,000, for one year. The plaintiffs, upon receipt of the policy, delivered it to the First National Bank of Jermyn, their mortgagee. On May 29, 1932, the property was partially destroyed by fire, and this suit was brought May 2, 1934.

The defense was the non-payment of premiums, cancellation of the policy, and failure to bring suit within twelve months next after the fire, as required by the terms of the policy.

It appeared at the trial that Waters, on March 1, 1932, about three months before the fire, sent plaintiffs, by registered mail, a notice of cancellation of their policy. When the postman told Mrs. Rapochi that he had a registered letter, she refused to accept it and it was returned to Waters.

The appellant concedes in this appeal that the non-payment of premiums was eliminated by the jury's verdict and that the defense of cancellation is not pressed, so that the question now before us is whether the defendant, by its conduct, is estopped from invoking the twelve-month limitation inserted in the policy by and for its benefit.

Waters called at the Rapochi home four times between March 4th and May 27th, two days prior to the

fire, making collections on the open account due for insurance premiums advanced by him. On none of these visits did he mention the subject of cancellation. In response to a telephone call, Waters went to the Rapochi home again the day after the fire and informed Mrs. Rapochi that their policy had been cancelled. Very shortly thereafter the plaintiffs called at the bank, the mortgagee, and found that Waters had obtained possession of the policy and returned it to the company. This information strongly confirmed Waters' statement as to cancellation. Then, in the apparent belief that the policy had been cancelled, they asked the company, through Waters, to give their claim some consideration, which request was refused. In a short time they consulted H. D. Carey, Esq., their attorney, who informed them he was not in position to represent them as he was attorney for the mortgagee. Later, in June, they consulted Joseph T. Kelly, Esq., who wrote Waters concerning the claim, and received the reply that cancellation notice had been served on the assured and that the company had advised him they could not "pay this claim due to the fact that the policy had been cancelled and returned to the Home Office March 12." Mr. Kelly then advised Mrs. Rapochi that they had no redress. On October 25, 1932, Mrs. Rapochi had a friend write for her to the company for information as to the status of their policy. The company replied, "there is no liability under this policy, it being cancelled from date of inception, and the cancelled document is in our possession." The following January, the plaintiffs consulted another lawyer, Mr. Mastriani, who also wrote Waters and the insurance company, and he, likewise, was informed that the policy, in fact, had been cancelled. The plaintiffs, having been told by Mr. Mastriani that he could not represent them, returned to Mr. Carey, who advised them, on November 4, 1933, that, in his opinion, defendant was liable,

and a suit in equity was started against Waters to get possession of the policy. Preliminary objection to the court's jurisdiction was sustained, and on January 8, 1934, the bill was dismissed. Finally, on May 2, 1934, this action was brought.

The appellant argues that the plaintiffs did not rely upon the statement that the policy was cancelled, and, therefore, they were not misled and deceived by any alleged wilful and fraudulent statement of fact. Mrs. Rapochi did testify that, when Waters told her the day. after the fire of its cancellation, she did not believe him. No doubt she was surprised and agitated by this information and could not immediately fully realize that she had lost her insurance. Waters had sold the plaintiffs insurance since 1923 and had extended credit to them. The plaintiffs, who were unable to read or write the English language, apparently had trust and confidence in him. When Mrs. Rapochi's attention on the stand was directed to what she had said to Waters when he told her their policy was cancelled, she stated: "I told for him, I say, 'What I going to do?' I say, 'You my judge, because I know nobody, only I pay my money, I pay for him.'" The relationship of the parties, and the circumstances in which this statement was made should be considered in determining its meaning.

The solicitation of consideration from the company, the seeking of legal aid to learn if the policy had been legally cancelled, the fruitless efforts to obtain the policy or a copy, the dependence placed on Waters in insurance matters, were all facts for the jury's consideration, and were sufficient to warrant the conclusion that the plaintiffs did rely on the false statements made by Waters and the defendant.

It was the duty of the insurer to deal openly and justly with these illiterate people, who depended largely, if not entirely, upon the fairness and honesty of its agent, whose statements concerning their insurance

they would accept as true and authoritative: Suravitz v. Prudential Ins. Co., 244 Pa. 582, 590, 91 A. 495; Fedas v. Ins. Co. of State of Penna., 300 Pa. 555, 151 A. 285; Emery v. Third Nat. Bank of Pbg., 308 Pa. 504, 162 A. 281; Arlotte et al. v. Nat. Liberty Ins. Co., 312 Pa. 442, 167 A. 295; Butcher v. Newburger et al., 318 Pa. 547, 179 A. 240.

Furthermore, the evidence tends to support the contention that these false statements were knowingly made. Waters, in his letter to Kelly, stated that the notice of cancellation had been served on Mrs. Rapochi. With his knowledge that his registered letter, which was the only attempt of service, was returned to him, he must have known that statement was untrue. The jury could have readily inferred that he, with his wide experience in insurance matters, was fully aware that his statement that the policy had been cancelled was also false.

We concur with the court below that Waters' statement was not an expression of opinion or a conclusion of law, but one of fact, knowingly and falsely made. He did not say that "in his opinion" or that it was his "conclusion" that the policy had been cancelled, but in his letter to Kelly, for instance, as already pointed out, he stated that as a fact there was a cancellation, that is, it had actually been accomplished, notwithstanding he must have known, as the transactions were through him, that the policy was in force. An injured party may recover, however, if he relies on false statements which are partly matters of opinion and partly matters of fact (Gillespie et al. v. Hunt et al., 276 Pa. 119, 124, 119 A. 815), or on statement of opinion alone, if it is shown that the party knows it to be false and that it was intended he should and he did, in fact, act on it to his injury: Warren Sav. Bk. & Tr. Co. v. Foley, 294 Pa. 176, 182, 144 A. 84.

In Arlotte v. Nat. Liberty Ins. Co., supra (312 Pa.

442, 167 A. 295), the insured had lost his policy which covered loss caused by an auto or truck. His property was struck by a truck and damaged. The company's agent told plaintiff the policy did not cover the damages sustained. As a result, a suit was not brought until after the one-year limitation. The Supreme Court held that that statement was one of fact within the agent's knowledge and as the insured relied thereon, the company was liable. Mr. Justice DREW there said (p. 445): "As stated in Williston, Contracts, section 677, 'It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.' Thus, an insurer will not be permitted to take advantage of the failure of the insured to perform a condition precedent contained in the policy, where the insurer itself is the cause of the failure to perform the condition. Our decisions have recognized and followed this principle." The appellant contends that this case is distinguished from the one at bar because the agent there knowingly made a false statement concerning a fact appearing in the policy; but a deception was practiced in both cases.

There can be no doubt that the representations made to and relied upon by plaintiffs were false. It is not even asserted to the contrary. As there was no valid cancellation, the defendant was not entitled to possession of the policy and was open to just criticism for wrongfully retaining it and resisting every effort of the plaintiffs to obtain their own property. This was to the plaintiff's prejudice, causing them delay and trouble, as well as the expense of an equity suit. "It is a well settled rule of law that a party to a contract cannot escape his obligation on the ground that the other party has failed to perform a condition precedent to the establishment of such liability or to the mainte-

nance of an action upon the contract, where he himself has caused that failure:" Arlotte v. Nat. Liberty Ins. Co., supra, (312 Pa. 442, 445, 167 A. 295).

Although we have given careful consideration to the appellant's argument and the cases it has cited, including Mutual Life Ins. Co. v. Phinney, 178 U. S. 327, 44 L. ed. 1088, we think they are not controlling in the case before us.

Judgment affirmed.