Pittsburgh et al., Appellants, *v.* Firemen's Insurance Company of Newark.

Argued October 4, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Oscar G. Peterson*, Assistant Solicitor, with him *Mortimer B. Lesher*, Solicitor, *Niles Anderson*, Assistant Solicitor, *Anne X. Alpern*, City Solicitor, *Emanuel F. Schifano*, Assistant City Solicitor, *Nathaniel K. Beck*, County Solicitor and *Joseph A. Cirillo*, Assistant County Solicitor, for appellants.

*D. C. Jennings*, for appellee.

OPINION BY MR. JUSTICE JONES, November 13, 1950:

The plaintiffs, the City of Pittsburgh, the School District of the City of Pittsburgh and the County of Allegheny, acquired at a sale for nonpayment of taxes certain real estate consisting of a lot of ground and a dwelling house thereon erected. After becoming joint owners of the property, the three taxing authorities took out fire insurance on the dwelling in a stated sum with the defendant, the Firemen's Insurance Company of Newark. The policy was on a standard form containing the usual coverage provisions and the usual conditions including requirements of immediate notice by the insured to the company of any loss and the rendering by the insured to the company of a proof of loss within sixty days of a fire.

On February 17, 1947, while the policy was in force, the dwelling was damaged by fire whereof the plaintiffs admittedly gave the defendant immediate and proper notice. It so happened that the municipal owners had advertised the property for public sale on Febru-

ary 17, 1947, at an upset price of $9,000; and, on that day, but prior to the fire, a bid of $9,000 for the property had been received by the authorized representative of the three taxing bodies. The bid was never accepted, however. The insurance company promptly referred the matter of the fire loss to an adjusting agency as its representative. On March 6, 1947, the adjuster addressed a letter to the attention of H. R. Greene, agent for the plaintiffs in respect of the property. In that letter the adjusting agency's representative, with the avowed approval of the insurance company, proposed that the property be again offered for sale and, if a bid of less than $9,000 was received therefor, the insurance company "would be agreeable to assume the loss between that amount and the sale price, in addition to the additional expense to which [the taxing bodies] would be put to hold another sale on [sic] the property."[1] This proposed method of loss adjustment had

---

[1] The letter of March 6, 1947, from the adjuster to the attention of H. R. Greene was received in evidence at trial as Plaintiffs' Exhibit No. 2 and reads in full as follows:

"March 6, 1947.

City of Pittsburgh
312 City County Building
Pittsburgh, Pa.

H. R. Green
Att: Director of Buildings

Dear Mr. Green:

Confirming our telephone conversation in connection with the fire claim of February 17, 1947, at 5907 Callowhill Street, Pittsburgh, Pennsylvania, wish to advise that we have discussed this matter with the local representative of the Firemen's Insurance Company and they are of the opinion that the most equitable way of determining the amount of loss would be to readvertise this property for sale and if it does not bring the established value of $9000.00, they would be agreeable to assume the loss between that amount and the sale price, in addition to the additional expense to which you would be put to hold another sale on the property.

neither been accepted nor rejected by the taxing bodies by August following when Greene asked for a further meeting with the representative of the adjusting agency. At the ensuing meeting on August 11, 1947, the representatives of the insurance company laid before Greene a "non-waiver agreement" and stated that they would not discuss the matter of loss adjustment further unless he signed it. Greene replied that he was without authority so to do. The purpose of the proposed "non-waiver agreement" was to toll any possibly existing waiver by the insurance company of the policy requirement that the insured render the company a proof of loss within sixty days of a fire,—a period which had

In our discussion, it was agreed that the return to the City just previous to this fire loss was pegged at $9000.00, which was the highest bid obtained; and if the bidder does not care to go through with the deal on that basis, certainly the resale would help to establish a proper base for figuring the loss by fire. The Company does not feel that they should consider accepting the assignment of this policy to the prospective purchaser as their only purpose is to protect you, the assured, against loss and it is coincidental that the sale and the fire occurred on the same day. Had no fire occurred, the three taxing bodies would have received $9000.00 for the property and in the event the purchaser does not care to go through with the deal, a resale, which we understand you have authority to hold, will certainly bring some bids and the differences between these bids and $9000.00 would, in our opinion, be the most equitable way to establish the loss.

We appreciate the fact that the sale includes not only the building but the land and it may be that if the bids are opened again, the property may bring a more substantial offer than $9000.00, as in our opinion, this building is so old and so large that the costs of repairing and rebuilding it, even had no fire occurred, would be prohibitive. The chances are the bidders are interested in acquiring the property due to its advantageous location. We would appreciate you giving this proposition consideration and remain,

Yours very truly<br>
Keystone Adjustment Corporation<br>
D. E. Hubbard, Adjuster."

DEH:mlp

already expired by approximately four months.

Amicable adjustment of the loss having thus failed, the plaintiffs brought suit on the policy. The defendant answered and, after admitting the material averments of the complaint except for the amount of the damage claimed, averred that the plaintiffs had not rendered the defendant company a proof of loss within sixty days as required by the policy and that, in accordance with a further provision of the policy, legal action thereon was not sustainable. In the plaintiffs' reply to the defendant's answer, they admitted that they had not rendered the defendant a proof of loss within sixty days but averred that the defendant, through the actions and representations of its agents or employees, had waived the filing of a formal proof of loss. The learned trial judge construed the adjuster's letter (Plaintiffs' Exhibit No. 2) to be nothing more than corroboratory evidence that there had been negotiations, looking to adjustment of the loss, between representatives of the insured and the insurer within the sixty-day period; and, inasmuch as the plaintiffs admitted not having filed a formal proof of loss within sixty days, the trial judge, at the conclusion of the plaintiffs' case, entered a compulsory nonsuit which the court en banc thereafter refused to take off. From that order, the plaintiffs have appealed.

Whether the letter (Plaintiffs' Exhibit No. 2) constituted a waiver of the proof of loss requirement of the policy was a question of law for the court to answer. The learned trial judge correctly so recognized, citing *Unverzagt v. Prestera,* 339 Pa. 141, 145, 13 A. 2d 46. The letter was clear and unambiguous and the facts attending its transmission and receipt were undisputed. The court below erred, however, in failing to give the letter its obvious and intended import. It has long been the settled law of this State that waiver of proofs of loss required by an insurance policy need not

be express but "may be inferred by any act of the insurer evincing a recognition of liability or a denial of obligation exclusively for other reasons": *Pennsylvania Fire Insurance Company v. Dougherty,* 102 Pa. 568, 571. This rule has often been reiterated and applied by this court.[2]

With specific reference to the acts of an insurer from which a waiver of proof of loss may be inferred, Mr. Justice KEPHART, in *Fedas v. Insurance Company of the State of Pennsylvania,* 300 Pa. 555, 560, 151 A. 285, clearly implied one type of such conduct when he posed the following rhetorical question,—"If [the insurer's] representative adopts another method of ascertaining the loss, * * * what would be the use of filing a proof of loss?" The condition presupposed in the foregoing interrogation is precisely what the insurer did in the instant case. The letter of March 6th specifically and plainly proposed a different method for the adjustment of the loss than what the policy itself provided. If the proposal was accepted, the filing of a proof of loss would, obviously, be unnecessary. With respect to a situation so produced, the *Fedas* case further commented that "A policyholder need not do a vain thing, nor is he to be prejudiced for failure to observe a technicality, the performance of which would be useless." In *Arlotte v. National Liberty Insurance Company,* 312 Pa. 442, 445, 167 A. 295, our present Chief

---

[2] See *McMeekin v. Prudential Insurance Company of America,* 348 Pa. 568, 573, 36 A. 2d 430; *Arlotte v. National Liberty Insurance Company,* 312 Pa. 442, 445, 167 A. 295; *Fedas v. Insurance Company of the State of Pennsylvania,* 300 Pa. 555, 559-560, 151 A. 285; *Jenkins v. Franklin Fire Insurance Co.,* 282 Pa. 380, 384, 127 A. 836; *Simons v. Safety Mutual Fire Insurance Co.,* 277 Pa. 200, 203, 120 A. 822; *First National Bank of Mildred v. Home Insurance Co.,* 274 Pa. 129, 133, 118 A. 17; *Roe v. Dwelling House Insurance Company,* 149 Pa. 94, 103, 23 A. 718; and *Bonnert v. Pennsylvania Ins. Co.,* 129 Pa. 558, 563, 18 A. 552.

Justice gave expression to the pertinent rule and quoted approvingly from *Fedas v. Insurance Company of the State of Pennsylvania,* supra, as follows: "Thus, an insurer will not be permitted to take advantage of the failure of the insured to perform a condition precedent contained in the policy, where the insurer itself is the cause of the failure to perform the condition. Our decisions have recognized and followed this principle. In Fedas v Ins. Co., 300 Pa. 555, the insurer, through its adjuster, stated to the insured that it would not pay the loss because, it claimed, the insured was criminally responsible for the fire. It was held that this act of the insurer precluded it from objecting to the failure of the insured to file proofs of loss within the time limited by the contract. Mr. Justice KEPHART, speaking for the court, said: 'The utmost fair dealing should characterize the transactions between an insurance company and the insured. If the insurer, having knowledge of a loss, by any act throws the insured off his guard as to the necessity of performing some duty enjoined by the policy, the insurer should not be permitted to take advantage of the failure to act.' "

In the instant case, the thing of controlling significance is not that the plaintiffs took no action with respect to the insurer's proposal before the sixty-day period had expired but that, during that time, the insurer had voluntarily made the proposal without time limitation and then had let the offer remain extant while the sixty days for the filing of proof of loss elapsed. It is difficult to imagine a more classic example of a situation where "the [insurance] company by its acts lulls the vigilance of the insured into inactivity so far as furnishing proofs of loss is concerned . . ." See *Jenkins v. Franklin Fire Insurance Co.,* 282 Pa. 380, 384, 127 A. 836, where it was held that, in such circumstances, "the company will not be permitted to set up the failure to furnish the proofs to defeat recovery on

the policy: [citing cases]." This is not a case of a rejected offer of compromise or mere disappointment in the expectation of settlement. The affirmative and positive action by the insurance company looking to an adjustment of the loss without the filing of proofs of loss was such as to induce the plaintiffs' representative reasonably to conclude that the filing of a proof of loss would not be required, at least, not within the sixty-day period. It was patent to the insurance company's adjuster that Greene was acting for three public bodies, each of which would separately have to take formal action by its authorized officials. The evidence amply warrants a finding that the defendant by its conduct waived the filing of a formal proof of loss within the sixty-day period. The entry of an involuntary nonsuit was, therefore, error.

Judgment reversed with a procedendo.