FRANK MUNOZ *v.* MARGUERITE K. ASHFORD, AS COMMISSIONER OF PUBLIC LANDS FOR THE TERRITORY OF HAWAII, AND E. ROGERS.

NO. 2923.

ARGUED OCTOBER 1, 1953.  DECIDED JANUARY 14, 1955.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY TOWSE, C. J.

This is an appeal from an order sustaining a demurrer to the petition of the appellant, an unsuccessful bidder at the public auction of a lease upon a parcel of territorial land conducted by respondent-appellee's predecessor in office and in which appellant also sought cancellation of a lease upon the parcel to respondent-appellee Rogers, the highest bidder at the sale.

The material portions of the bill allege: That petitioner, a resident and taxpayer of the county of Maui,

brings this action individually and on behalf of the tax-payers and citizens of the Territory of which he is one of a class; that on November 14, 1951, December 5, 1951, December 26, 1951 and January 12, 1952, respondent Godbold, as commissioner of public lands, caused to be published in the Maui News, a newspaper of general circulation in the Territory, a notice of sale of territorial government general leases of government lands on the islands of Maui and Molokai; that included among the parcels of lands described in said notice was a parcel designated "A-3," situated at Lahaina, Maui, containing an area of approximately 4,896.28 acres, the term of lease being twenty-one years from January 14, 1952, with an upset rental of $2,500.00 per annum; that said parcel together with other parcels was to be sold at public auction to the highest bidder on January 14, 1952, at the territorial office building in Wailuku, Maui, at 9:00 o'clock a. m., pursuant to section 73 of the Hawaiian Organic Act and the Revised Laws of Hawaii 1945, as amended.

That section 4531 of the Revised Laws of Hawaii 1945, referred to in the notice of public sale, provides in part: "Notice of any auction as above required shall contain a full description of the land to be sold as to locality, area and quality, with reference to the survey, which shall in all cases be kept in the office of the commissioner or his agents. Such surveys shall be open to inspection to all who may desire to examine the same, without charge, during the whole period of the advertisement of the auction."

That the published notice provided, among other matters pertaining to rights-of-ways and water rights, that: "Each successful bidder shall, at the fall of the hammer, deposit with the auctioneer in cash or by certified check a sum equal to six months' rent as established by his bid, together with the pro rata share of all advertising costs,

survey charges and other charges required by law;" and further that: "The form of government general leases containing most all of the covenants to be complied with by successful bidders, together with maps of all parcels offered for sale, showing the existence or non-existence of access rights-of-ways, are on file * * * at the office of the Subland Agent, Territorial Office Building, Wailuku, Maui * * * and are available for inspection thereat;"

That immediately after the first publication of said notice, petitioner proceeded to the subagent's office at Wailuku, Maui, and requested the subagent of said commissioner for the county of Maui to permit him to inspect the form of leases and maps of the parcels which were to be included in the public sale as advertised together with the form of lease and map of said parcel A-3; that petitioner was informed by said subagent, then and there acting within the scope of his authority that the forms of leases and maps of the said parcels were not then available, but that he would promptly obtain the same and have them available for inspection by the petitioner prior to the time set for the auction;

That on numerous occasions thereafter petitioner called in person at the said Maui office of respondent commissioner and requested of the said subagent that he be permitted to inspect the forms of leases and maps of the parcel as aforesaid but that on each occasion petitioner was informed by the subagent that they were not available but that he would obtain the same; that at no time prior to the auction sale did said subagent make them available, and that the said subagent refused and neglected to comply with the provisions of said published notice above set forth or with section 4531 of the Revised Laws of Hawaii 1945;

That the failure of said subagent to comply with the provisions of the notice as aforesaid rendered it impossible for petitioner to determine the availability of water, the

location of boundaries, and the availability of access rights-of-way of and pertaining to the said parcel A-3; that the maximum annual rental that could be obtained for said parcel A-3 would be for its utilization as grazing land for cattle and therefore the amount of rental to be offered at said public auction was dependent upon the availability of sufficient water, the location of boundaries, and the availability of access rights-of-way;

That on January 14, 1952, the public auction was held pursuant to the published notice, and that petitioner was present and offered bids and did bid upon the lease of said parcel A-3; that respondent E. Rogers was the highest bidder, he having ceased bidding when he did not have sufficient cash or a certified check in his possession required to meet the conditions of sale; that contrary to the provisions of said published notice, and at the fall of the hammer establishing respondent E. Rogers the successful bidder upon said parcel A-3, the auctioneer did not require the said E. Rogers to deposit with said auctioneer in cash or by certified check a sum equal to six months' rental as established by his successful bid together with a pro rata share of all advertising costs, survey charges and other charges required by law, all as provided in said published notice;

That without the form of leases and maps of parcel A-3 having been theretofore made available to him for inspection as by law required, petitioner was not in a position to evaluate the maximum rental that he would have otherwise bid upon the said parcel A-3 although petitioner was ready, able and willing to bid substantially more than he did bid for said parcel, and substantially more than respondent Rogers' highest bid had he known or been informed by the auctioneer that it was not necessary to comply with the provisions of the published notice regarding a deposit in cash or by certified check;

That petitioner is informed and believes that subsequent to the said auction the respondent commissioner entered into a lease with respondent E. Rogers upon parcel A-3, which lease is now in full force and effect; that the said lease is null and void for the reason that the terms and conditions of the published notice and the requirements of section 4531 of the Revised Laws of Hawaii 1945, were not complied with and that as a result thereof, the Territory of Hawaii suffered irreparable loss in that the maximum rental for parcel A-3 was not obtained at said auction and that as a further result thereof petitioner was deprived of his rights as a citizen in connection with said auction; that petitioner is in the class of persons whom he represents, to wit, the citizens and taxpayers of the Territory of Hawaii who suffered irreparable injury as aforesaid;

That petitioner has demanded of respondent commissioner that he vacate and set aside the lease to E. Rogers as aforesaid, but that said respondent commissioner's predecessor in office failed, refused and neglected to vacate or set aside said lease; wherefore, petitioner prays that the lease of parcel A-3 to respondent E. Rogers be vacated, set aside, and declared null and void.

The respondent commissioner appeared below by the attorney general of the Territory and demurred to the petition upon the following grounds: that the petition fails to disclose a justiciable interest in petitioner as an individual and as a taxpayer to entitle him to standing before this court for the relief prayed for in said petition; that the petition discloses the Territory of Hawaii to be the real party in interest against which relief is sought, yet fails to join said Territory as a proper party respondent; that said petition fails to allege the consent of the Territory to be sued by petitioner; that said respondent Godbold, as commissioner of public lands, has improperly

been made a party to the suit; that the petition discloses petitioner to be guilty of laches and is estopped from bringing any action for the relief prayed for.

Respondent E. Rogers also entered a demurrer in which he joined and adopted the demurrer of the respondent commissioner and in addition alleged that prior to the filing of the petition no demand was made upon the Territory of Hawaii by or through its attorney general to institute proceedings to obtain the cancellation of the outstanding lease upon parcel A-3, and that petitioner was estopped to attack the regularity of the auction sale.

Both demurrers were sustained upon all grounds by the trial judge without opinion and the petition was dismissed. From that order the petitioner appeals.

The issues raised by the joint demurrers will be considered in their respective order. Does the appellant possess standing as a taxpayer to invoke the aid of a court of equity to rescind a lease of public lands executed to a third party pursuant to a public auction sale on the grounds of alleged illegalities occurring in connection with the sale?

Appellant contends that he, as a taxpayer and as a representative of all taxpayers of the Territory possesses an undisputed right to institute proceedings to determine alleged illegal conduct of public officer, citing *Castle et al* v. *Kapena*, 5 Haw. 27; *Castle* v. *Territory*, 16 Haw. 769; *Lucas* v. *American Hawaiian Engineering Company*, 16 Haw. 80; *McCandless* v. *Carter*, 18 Haw. 221; *Wilder* v. *Pinkham*, 23 Haw. 571. These cases were discussed and distinguished in an analogous factual situation presented in the recent case of *Wilson, etc.* v. *Stainback, Gov., et als.*, 39 Haw. 67, 72, wherein the general rule was reaffirmed that "in this jurisdiction damages to the extent that some interests or property of the taxpayer would be injuriously affected by illegal acts of public officials, about to be

committed in expending public money or creating a public debt and requiring prompt action to prevent irremedial public injury, is the requisite of his right to sue and prevent the violation of law by injunction to restrain those acts."

That a taxpayer may maintain an action only when he as such taxpayer, and taxpayers as a class, have sustained or will sustain pecuniary loss is well settled. (*Wilson, etc.* v. *Stainback, Gov., supra; Frothingham* v. *Mellon,* 262 U. S. 447; *Henderson* v. *McCormick,* 70 Ariz. 19, 215 P. [2d] 608; 17 A. L. R. [2d] 470; *Crews* v. *Beattie,* 197 S. C. 32, 14 S. E. [2d] 351; 52 Am. Jur., Taxpayers' Actions, § 3, pp. 3, 4.) "The decided preponderance of authority * * * holds that a taxpayer singly or in class suit may maintain a suit in equity to restrain unlawful municipal action which leads, directly or indirectly, to taxation, and that a taxpayer, as specially damaged by the increase of the burden of taxation on his property, has a special interest, distinct from the general public, in the subject matter of such a suit which entitles him to relief, although this right of a taxpayer has occasionally been denied." (52 Am. Jur., Taxpayers' Actions, § 3, p. 3; *Crampton* v. *Zabriskie,* 101 U. S. 601; *Americus* v. *Berry,* 114 Ga. 871; 40 S. E. 1004, 57 L. R. A. 230; *Tuscan* v. *Smith,* 130 Me. 36, 153 A. 289, 73 A. L. R. 1344.)

And where it appears that fraud exists, either actual or constructive, in the sale of property owned by a municipality or other political unit, the fraudulent act is considered tantamount to a waste of public funds thereby vesting a taxpayer with sufficient pecuniary interest to attack the sale. (*Henderson* v. *McCormick,* 70 Ariz. 19, 215 P. [2d] 608, 17 A. L. R. [2d] 476, 489; *Heilig Bros. Co.* v. *Kohler,* 366 Pa. 52, 76 A. [2d] 613, reversing on other grounds 63 York Leg. Rec. 69; *Smart* v. *Graham,* 179 Md. 476, 20 A. [2d] 576.) However, mere irregularity without

more and not amounting to fraud asserted in connection with a sale, is in general considered insufficient grounds to justify intervention by a taxpayer: "The very nature and purpose of a taxpayer's action, like the present one, presume that there will be more than illegality in order to enable him to intervene. The basic theory of such an action is that the illegal action is in some way injurious to municipal and public interests, and that if permitted to continue, it will in some manner result in increased burdens upon, and dangers and disadvantages to, the municipality and to the interests represented by it and so to those who are taxpayers." (*Henderson* v. *McCormick, supra,* 24.)

The foregoing principles were held controlling in an action against municipal officers seeking to compel the restoration of funds paid by the municipality under a public contract for construction of a reservoir, the grounds upon which the action was premised being that the contract was let by city officials without plans or specifications having been on file with the city clerk and without bids having been advertised as required by statute. In dismissing the action it was noted that if the "contract had been tainted by fraud or collusion * * * [or] if the officers had gone beyond the power of the city to contract * * * [or] if the city had been defrauded in any way by the illegal action of its officers and the contractor, we should have no hesitation in compelling the guilty parties to return the money to the city treasury. But this is not a case. Here the city had the power to build a reservoir. * * * It was built at a fair price. * * * The officials profited not at all by the contract, nor does it appear that the city suffered in any way by the failure of the officials to comply with conditions precedent to letting a valid contract. The contract was let at a regular public meeting of the council, the work was done in full public view, and it was a matter

of public comment in the press and discussion among the citizens." (*Ellefson* v. *Smith et al.,* 182 Wis. 398, 401, 402, 196 N. W. 834.)

Appellant contends that the acts of the subagents first, in denying him access to the forms of leases and maps of parcel A-3, and second, in failing to require appellee Rogers to make the deposit in either cash or certified check at the conclusion of the sale were "illegal," thereby warranting cancellation of the lease. Upon the principles discussed *supra,* the contention is without merit. It appears from the petition that the sale was advertised and conducted openly and without objection by either appellant or by any other person present. Except for the bare irregularity of the auctioneer's failure to require appellee Rogers to deposit the required sum of money at the conclusion of the sale the auction was fairly conducted in all other respects. It further affirmatively appears from the petition that the sale was consummated within the statutory authority vested in the commissioner and his subagents. (Organic Act, § 73; R. L. H. 1945, §§ 4504, 4505, 4511.) The petition bears no allegations asserting or intimating that any of the foregoing acts involved fraud, either actual, or constructive, or that there was collusion on the part of the public officials connected with the sale. (Cf. *McCord* v. *Pike,* 121 Ill. 288, 12 N. E. 259, 2 Am. St. Rep. 85; *Taxpayers' League of Wayne County* v. *Wightman,* 139 Neb. 212, 296 N. W. 886; *Heilog Bros. Co.* v. *Kohler,* 366 Pa. 52, 76 A. [2d] 613.) We find that in the factual situation presented by the demurrers, the failure of the subagent to comply with section 4531 of the Revised Laws of Hawaii 1945, in denying appellant access to the forms of leases and maps of parcel A-3, and the failure of the auctioneer to require appellee Rogers to deposit the proper sums of money in either cash or certified check in accordance with the terms of the published notice, do not,

without more, warrant cancellation of the lease. "Mere illegality is not enough. * * * To be entitled to this relief, when waste or injury is not involved, it must appear that in addition to being an illegal official act, the * * * act is such as to imperil the public interest or calculated to work public injury or produce some public mischief." (*Henderson* v. *McCormick*, 70 Ariz. 24, 215 P. [2d] 608; 17 A. L. R. [2d] 470.)

Although the petition alleges that the Territory "suffered irreparable loss in that the maximum rental for parcel A-3 was not obtained pursuant to the auction," it does not allege that such loss in revenues resulted in an increase of the appellant's tax burdens or that of taxpayers in general if such be the case and therefore is insufficient as a matter of law. In *Rushing* v. *Lynch,* Tex. Civ. App., 22 S. W. (2d) 482, a taxpayer's action to cancel a contract for the sale of county school lands upon grounds that the consideration paid would result in the loss of a substantial amount to the school land fund of the county, the proceeding was dismissed, the court observing that: "Although the sale of the lands at a wrongful price, if such be the case, might have the effect of occasioning a loss of available school funds * * * yet the private individual would not be directly or immediately affected thereby through taxation. There is no provision of law to reimburse the loss, as such, through means of actual taxation of property. The remedy of action against the wrongful sale would lay with the public, considered as a whole or in the collective sense, acting through duly constituted officers." (*Rushing* v. *Lynch, supra,* 484.) The relevant statutes in this jurisdiction reveal that "all funds arising from the sale or lease or other disposal of public lands shall be appropriated by the laws of the government of the Territory of Hawaii and applied to such uses and purposes for the benefit of the inhabitants of the Territory

of Hawaii as are consistent with the joint resolution of annexation, approved July 7, 1898 * * *." (Organic Act, § 73 (e), 48 U. S. C. A. 666; R. L. H. 1945, § 4519.) The joint resolution of July 7, 1898 provides that "all revenue from or proceeds of [public lands] * * * shall be used solely for the benefit of the inhabitants of the Hawaiian Islands for educational and other public purposes." (48 U. S. C. A. 661.) Appellant cites no authority, nor do we find any, sustaining the view that any losses in revenues to the Territory such as that of which appellant complains, would result in increasing either his personal tax burdens or that of all taxpayers in general. Appellant, as a taxpayer, has neither alleged nor asserted any pecuniary injury or loss other than the foregoing. (*Rushing* v. *Lynch,* Tex. Civ. App., 22 S. W. [2d] 482.)

The second, third and fourth issues raised by the appellee commissioner's demurrer will be considered as one, viz: whether the failure to allege the Territory's consent to be sued and the nonjoinder of the Territory as the real party in interest constitutes a bar to the action. "It is well settled in this jurisdiction that all parties interested in the subject-matter of a suit in equity are necessary parties to the suit * * *." (*Waterhouse* v. *Achi,* 24 Haw. 431, 435.) Although the proceedings are addressed to the appellee commissioner, the mere denomination of a governmental officer does not of itself constitute the determinative factor of whether or not the action, is in substance, one against the sovereign. "It is a maxim that equity regards the substance rather than the form." (*Lord* v. *Lord,* 35 Haw. 26, 39.) Hence, "* * * whether a suit is one against a State is to be determined, not by the fact of the party named as a defendant on the record, but by the result of the judgment or decree which may be entered * * *." (*Minnesota* v. *Hitchcock,* 185 U. S. 373, 387). And where as here, a proceeding against a public officer seeks

to compel him to do "any affirmative act which affects the State's political or property rights," the action will be barred since the State is an indispensable party and cannot be sued without its consent. (*Hopkins* v. *Clemson College,* 221 U. S. 636, 642.) Thus in a taxpayer's suit against the state director of public works and one to whom he leased a tract of state land to cancel a lease and eject the lessee upon grounds that the lease was void for failure to comply with certain statutory requirements, the action was dismissed:

"The interest of the director in the instant litigation is identical with the state of Ohio, for the reason that in acting on behalf of the state in executing the lease, he caused the state to exercise its sovereign right and the state now has a direct proprietary and pecuniary interest in the matter involved in this action. If the prayer of the petition should now be made effective against the state, it would be deprived of the rent now being paid by the lessee. * * * the action against the director is in effect an action against the state itself which is the real party in interest." (*Reed* v. *Timberman,* 65 Ohio App. 182, 29 N. E. [2d] 446, 447, appeal dismissed 30 N. E. [2d] 993.)

Since the interest of the commissioner of public lands in the instant proceedings is identical with that of the Territory by virtue of his causing the Territory to exercise its sovereign powers in granting the lease upon the parcel in question, the Territory thereby acquired a direct proprietary and pecuniary interest in the existing lease. Consequently, the proceeding being one against the Territory as the real party in interest, the failure to so join the Territory and to allege its consent to be sued constitute a bar to the action. (*Reed* v. *Timberman, supra; Coffield* v. *Territory,* 13 Haw. 478; *Kawananakoa* v. *Polybank,* 17 Haw. 82, aff'd. 205 U. S. 349.)

The fifth issue raised by the joint demurrers, is whether

the action is barred by either the doctrines of laches or estoppel. We find the doctrine of equitable estoppel to be clearly applicable. "The rule of law is clear that where one by his words, or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is precluded from averring against the latter a different state of things, as existing at the same time." (*Molokai Branch, Ltd.* v. *Morris,* 36 Haw. 219, 223, quoting Lord Denman in *Pickard* v. *Sears,* 6 A. & E. [K. B.] 469, 475.) "But there is a species of equitable estoppel, sometimes called *quasi*-estoppel, which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by him. * * * No concealment or misrepresentation of existing facts on the one side, no ignorance on the other, are necessary ingredients." (*Hartmann et als.* v. *Bertelmann et als.,* 39 Haw. 619, 628.) Thus, "if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his own claim, shall not afterwards be permitted to exercise his legal right against such person." (*Kirk* v. *Hamilton,* 102 U. S. 68, 76, 77; *Peabody* v. *Damon,* 16 Haw. 447; see note, 30 A. L. R. 1173.) "This doctrine proceeds upon the ground that he who has been silent as to his alleged rights when he ought, in good faith, to have spoken, shall not be heard to speak when he ought to be silent." (*Crafton* v. *Patrick,* 77 S. C. 420, 58 S. E. 1, 2.) Accordingly, where a party asserting the invalidity of a judicial or other public sale or auction of property upon the grounds of a defect or irregularity remains silent and fails to interpose objection at an appropriate time, and where, as here, he also directly

participated in and accepted the benefits of the sale by bidding, such party will be estopped from impugning the disposition of such property. (*Mesa County Co-op. Ass'n.* v. *McKinney*, 81 Colo. 513, 256 Pac. 13; *Kirk* v. *Hamilton*, 102 U. S. 68; *McDaniel* v. *Leggett*, 224 N. C. 806, 32 S. E. [2d] 602; *Walker* v. *Hannon et al*, 191 S. C. 14, 3 S. E. [2d] 243.)

Upon the foregoing principles appellant is estopped to maintain the instant proceedings. It appears from the petition that from November 14, 1951, the date upon which appellant first requested access to the documents and maps of parcel A-3 at the office of the subagent at Wailuku, Maui, until demand was made upon the commissioner and this action instituted more than two months after the auction sale, that appellant remained silent and at no time asserted or sought to enforce any of the rights which he might have possessed by virtue of the alleged irregularities now complained of. In lieu of voicing or intervening with such objections prior to or during the sale, appellant it appears, voluntarily delayed until the day of the sale at which time he admittedly and enthusiastically participated in the bidding thereby electing, at that juncture, to accept the benefits accorded him by the public auction sale. Upon failing to become the highest bidder appellant thereupon commenced the instant proceedings more than two months thereafter. It further appears from the petition that appellee Rogers purchased the lease without having been apprised of appellant's intentions of asserting his alleged rights until he was joined as a party herein. In those circumstances, to now permit appellant to assert his claim of irregularity after his silence on the one hand, and active participation in the sale on the other have given the patent appearance of acquiescence, consent, ratification, and acceptance of the benefits of the sale, would be unconscionable. (*McDaniel* v. *Leggett*, 224 N. C. 806, 32

S. E. [2d] 602; *Walker* v. *Hannon et al*, 191 S. C. 14, 3 S. E. [2d] 243; *Mesa County Co-op. Ass'n.* v. *McKinney*, 81 Colo. 513, 256 Pac. 13; *Hartmann et als.* v. *Bertelmann et als.*, 39 Haw. 618.)

The sixth issue raised by appellee Roger's demurrer is whether or not sufficient demand upon the commissioner was made prior to commencement of suit. It is the general rule that: "In the absence of a statute governing suits by taxpayers, a demand upon the proper public officer to take appropriate action is a condition precedent to the maintenance of a taxpayer's action challenging the validity and legality of what public officers are intending to do or have done, unless facts are alleged which sufficiently show that the demand to bring suit would have been useless." (*Reiter* v. *Wallgren*, 28 Wash. [2d] 872, 876, 877, 184 P. [2d] 571.) Appellant contends that the appearance of the attorney general in this proceeding renders it obvious that a request upon him to institute proceedings to cancel the newly executed lease on behalf of the Territory would have constituted "mere idle ceremony." The identical argument was propounded and answered in *Reiter* v. *Wallgren*, 28 Wash. (2d) 872, 877, 878, 184 P. (2d) 571: "The obvious answer is that the attorney general is merely performing a duty imposed upon him by statute * * * and is demurring to a complaint which fails to show that the plaintiff has any capacity to maintain the action. It is equally obvious that appellant could not know what the attorney general would have done if the facts had been laid before him, and a proper demand made upon him at the time the complaint was prepared and the action commenced. It is as of that date, not the date of the appearance of the defendants, that appellant's capacity to sue must be determined. Neither personal interest nor previous failure to act raises a presumption that the attorney general will not act if a demand is made."

Upon this issue we find no demand is alleged or shown to have been made by the appellant upon the proper public officer, the attorney general of the Territory.

The demurrers were properly sustained.

Judgment affirmed.

*G. T. Nakamura,* Deputy Attorney General (also on the brief), for the Territory and E. Rogers, appellees.

*E. H. Nakamura (Bouslog & Symonds* with him on the briefs) for appellant.